UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIE GREEN,<br><br>        Petitioner,<br><br>v.<br><br>CAROL MECI,<br><br>        Respondent. | Civil Action No. 04-10360-JLT |

**PETITIONER WILLIE GREEN'S OPPOSITION TO RESPONDENT'S MOTION TO DISMISS PETITION FOR A WRIT OF HABEAS CORPUS AND REQUEST FOR EXPEDITED RULING ON RESPONDENT'S MOTION**

**INTRODUCTION**

Respondent has moved to dismiss the petition for a writ of habeas corpus filed by Petitioner Willie Green on the grounds that Ground Four of the petition was never presented to the Supreme Judicial Court of Massachusetts, and therefore Ground Four constitutes an unexhausted claim that may not be adjudicated by this Court. Mot. to Dismiss at 1. For the reasons expressed herein, Respondent's Motion to Dismiss should be denied because Ground Four was explicitly and fairly presented to the Supreme Judicial Court, and thus was exhausted. Petitioner respectfully requests an expedited ruling on the Respondent's motion to dismiss because the statute of limitations for filing his petition expires on September 24, 2004.[1] In the event that the Court finds that Ground

---

[1] In his direct appeal in the state court system, the Supreme Judicial Court denied Green's Application for Further Appellate Review on June 26, 2003. The one-year period of limitations was tolled during the 90-day period in which Green was entitled to seek certiorari in the Supreme Court – until September 24, 2003, and thus Green had one year – until September 24, 2004 -- in which to file his habeas claims. *See Nowaczyk v. Warden*, 299 F.3d 69, 71 (1st Cir. 2002) (2244(d)(1) provides for tolling during 90 period

Four was not exhausted, he requests that he be granted sufficient time within the statute of limitations to amend his petition.

## ARGUMENT

### I. GROUND FOUR FOR RELIEF WAS FAIRLY PRESENTED AND EXHAUSTED IN THE STATE COURT SYSTEM.

In this Circuit, "[t]he proper search [in an exhaustion inquiry] is a search for the heart of the matter, not for ritualistic formality." *Nadworny v. Fair*, 872 F.2d 1093, 1097 (1st Cir. 1989).

> Above all else, the exhaustion requirement is to be applied with a view to substance rather than form: the claim need not be argued in detail or separately presented, but its federal quality – demarcated by one of our suggested guidelines or so substantively federal that the prototypical (reasonable) jurist would understand that a federal claim had been presented – must be readily apparent.

*Id.* at 1101. *See also Williams v. Holbrook*, 691 F.2d 3, 6 (1st Cir. 1982) ("[F]or purposes of satisfying exhaustion, [ ] petitioner [need not] adhere inflexibly to the legal theories and factual allegations recited to the state courts; a recitation in the state courts 'book and verse' of the constitutional provisions on which she relies in federal court is not mandated.")(emphasis supplied). "The test is substantive: was the claim presented in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question?" *Scarpa v. DuBois*, 38 F.3d 1, 6 (1st Cir. 1994). *See also Nadworny*, 872 F.2d at 1098 (1st Cir. 1989) ("The appropriate focus, therefore, centers on the *likelihood* that the presentation in state court alerted that tribunal to the claim's federal quality and approximate contours.") (emphasis in original).

---

in which petitioner was allowed to ask Supreme Court to review state court's denial of his direct appeal and fact that petitioner did not seek certiorari is immaterial).

"The First Circuit has catalogued five ways in which a petitioner may satisfy the fair presentment requirement." *Rosado v. Allen*, 2003 U.S. Dist. LEXIS 4267, *6-*7 (Mar. 20, 2003). These are: "'1) citing a specific provision of the Constitution; 2) presenting the substance of a federal constitutional claim in such manner that it likely alerted the state court to the claim's federal nature; 3) reliance on federal constitutional precedents; ... 4) claiming a particular right specifically guaranteed by the Constitution ... and [5)] asserti[ng] ... a state law claim that is functionally identical to a federal claim." *Scarpa*, 38 F.3d at 6 (quoting *Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir. 1987) and, with respect to 5, *Nadworny*. 872 F.2d at 1093))

As demonstrated below, Green clearly exhausted Ground Four by presenting the Massachusetts Supreme Judicial Court with his federal claim "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of a federal question," *Scarpa*, 38 F.3d at 6.

Ground Four reads as follows:

> State appellate court's incorrect and unreasonable harmless error analysis constituted a continuing violation of Petitioner's federal constitutional rights to due process and his right to have the jury and not the courts determine his guilt and Article VI duties of state courts to uphold the Federal Constitution.

(Pet. at 6). The thrust of Ground Four is that the Appeals Court's erroneous application of the harmless error standard prescribed and required by *Chapman v. California*, 386 U.S. 18 (1967) and *Neder v. United States*, 527 U.S. 1, 19 (1999), constituted a "continuing violation" of Green's federal constitutional rights to due process and a jury trial because (1) the underlying substantive federal constitutional error, as found by the Appeals Court, was that the failure to instruct on defense of another had violated Green's

3

federal constitutional rights to due process; (2) the Appeals Court's erroneous application of the *Chapman-Neder* harmless error standard, which is clearly established federal law that is grounded in the federal constitution and binding on the States, deprived Green of a remedy for the underlying federal due process violation, and thereby negated Green's substantive federal constitutional rights, and (3) the Appeals Court violated Green's federal jury trial rights to have the jury and not the courts decide his guilt by concluding that the error was harmless beyond a reasonable doubt, when there was evidence which the Appeals Court itself stated could rationally lead a jury to a contrary finding. Contrary to Respondent's assertions, Green exhausted this *Chapman-Neder* claim in state court.

The violation claimed in Ground Four arose on April 10, 2003, when the Appeals Court denied Green's petition for rehearing and modified its July 5, 2002 opinion. R.1116.[2] In its July 5, 2002 opinion, the Appeals Court had concluded that the trial court had committed federal constitutional error in declining to give a defense-of-another instruction,[3] but evaluated whether "the absence of such an instruction constituted prejudicial error." (July 5, 2002 Order at 7; R.1000). Green filed a petition for rehearing in the Appeals Court on July 18, 2002, ("Reh. Pet."; R.1006-1007) arguing, *inter alia*,

---

[2] "R. [page number]"references the Record Appendix filed by Green with his petition.

[3] The Appeals Court recognized that the error was federal constitutional error that relieved the Commonwealth of its due process burden of disproving defense of another beyond a reasonable doubt, and cited directly to pages from two SJC decisions that discussed this federal due process requirement and directly relied on the Supreme Court's decisions in *In re Winship*, 397 U.S. 358 (1970) and *Mullaney v. Wilbur*, 421 U.S. 684 (1975). *See* Appeals Court's Decision R.997-998; 55 Mass.App.Ct. at 379 (citing *Commonwealth v. Rodriguez*, 370 Mass. 684, 687-688 (1976) and *Commonwealth v. Maguire*, 375 Mass. 768 (1978), which in turn cite to *Winship* and *Mullaney*). Green also claimed in the Appeals Court and the SJC that the error violated his federal due process right to present a defense and his federal jury trial rights to have the jury and not the courts decide his guilt. The Appeals Court and SJC never ruled on nor commented on these other federal constitutional claims, and hence they are subject to *de novo* review by this Court.

4

that because the trial court's error was federal constitutional error, under Supreme Court caselaw, "the [Appeals] Court should have evaluated [that] error using the harmless beyond a reasonable doubt standard [articulated in *Chapman*]" (*Id.* at 2; R.1007), and *Neder*. (*Id.* at 5-10; R.1010-1015). On July 25, 2002, while his petition for rehearing was pending, Green filed his Application for Further Appellate Review ("ALOFAR") in the Supreme Judicial Court, arguing, *inter alia*, that the Appeals Court had erred in not applying the *Chapman-Neder* standard to the trial court's erroneous omission of the defense-of-another instruction. (*Id.* at 18-22; R.1060-1064 & 24-26; R.1066-1067).

On April 10, 2003, the Appeals Court denied Green's petition for rehearing and modified its July 5, 2002 opinion. Rebuffing Green's argument that the error could not be held harmless under *Chapman*, and without any analysis whatsoever, the Appeals Court added this footnote to its July 5, 2002 opinion:

> Even considering the trial judge's failure to instruct on defense of another to be error of constitutional dimension, in these circumstances we determine that the Commonwealth proved that the error was harmless beyond a reasonable doubt and 'did not contribute to the verdict obtained.' Chapman v. California, 386 U.S. 18, 24 (1967). See also Commonwealth v. Vinnie, 428 Mass. 161, 163 (1998).

(Apr. 10, 2003 Order; R.1116). That footnote comprises the erroneous harmless error analysis alleged in Ground Four of Green's habeas petition.

After the Appeals Court modified its July 5, 2002 opinion by, *inter alia*, adding the offending *Chapman* footnote, Green filed in the SJC his Supplement to his ALOFAR. (R.1081-1136). As stated in the first paragraph therein, "This Supplement addresses the Appeals Court's modifications to its earlier opinion." (*Id.* at 1; R.1083). Green quoted the Appeals Court's *Chapman* footnote in its entirety. (*Id.* at 3; R.1085). He then asserted that the Appeals Court had, per *Neder*, misapplied *Chapman*: "Here, the

5

Appeals Court erred by failing to undertake the proper mode of analysis under *Chapman*[.]" (*Id.* at 8; R.1090). "[U]nder the mode of analysis prescribed by *Neder*, the Appeals Court erred in concluding that the underlying instructional omission was harmless beyond a reasonable doubt." (*Id.* at 10; R.1092). Green also quoted *Neder* at length for the proposition that, consistent with the Sixth Amendment "jury guarantee[,] ...where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding – [a reviewing court] should not find the error harmless." (*Id.* at 9; R.1091) (quoting *Neder* at 19).

Those passages alone would have been sufficient to satisfy the presentment requirement as to Ground Four – in quoting and relying directly on the Supreme Court's precedents (*Neder* and *Chapman*), Green presented his claim "in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of a federal question." *Scarpa*, 38 F.3d at 6. But Green did not stop there. Green proceeded to explain in detail the *mechanics* of that claim. Green asserted that the Appeals Court had wrongly decided that "because the jury had not acquitted the defendant based on self-defense, the jury would also not have acquitted him based on defense of another." (Supp. ALOFAR at 11; R.1093). However, as Green maintained, the "Appeals Court's analysis failed to take into account the material differences between the two defenses (e.g., the duty to retreat in self-defense but not in defense of another), and the different perspectives from which the jurors were required to evaluate the amount of force used (i.e., the amount of force required to defend Michael Burton)." (*Id.* at 11-12; R.1093-1094). Green argued to the SJC that once the Appeals Court found there was sufficient

6

evidence to require an instruction on defense of another, it was up to the *jury*, not the Appeals Court, to decide whether to acquit Green on that basis:

- "The flaw in the Appeals Court's analysis is that the defendants actions taken in defense of himself ... would not necessarily have been viewed *by the jury* as the 'same' with respect to Michael Burton, and the *jurors were never given a chance to evaluate the defendant's actions in the context of defense of another*." (*Id.* at 12-13; R.1094-1095) (emphasis supplied)

- From the fact that the jury found the defendant had used excessive force in self-defense, "it does not follow that the *jury would have found* the 'same' force to have been excessive in relation to the defendant's defense of Michael Burton." (*Id.* at 14; R.1096) (emphasis supplied)

- "Indeed, *it was for the jury to decide* whether the defendant reasonably believed that Burton would have been justified in using [lethal force] in Burton's defense." (*Id.* at 15; R.1097) (emphasis supplied)

- "[T]here clearly was evidence *from which the jurors could rationally have found* that the amount of force used was justified <u>in relation to Burton</u>[.]" (*Id.*) (italics supplied; underline original)

- "*The jury ... was never given the option* [to acquit based on defense of another], and *was never permitted* to consider the defendant's actions in relation to Michael Burton." (*Id.* at 16; R.1098) (emphasis supplied)

After detailing the myriad ways in which the Appeals Court, in conducting its *Chapman* analysis, had usurped the jury's role, Green capped off his argument by again arguing to the SJC: "In these circumstances, the Appeals Court's conclusion that the jury would have rejected defense of another for the same reasons they rejected self-defense is both speculative and incorrect. Moreover, its conclusion that the error was harmless beyond a reasonable doubt, when there was evidence which could rationally lead to a contrary finding, *fundamentally undermined the defendant's right to have the jury determine his guilt*." (*Id.* at 16-17; R.1098-1099) (emphasis supplied). In a footnote immediately after this sentence, Green again cited the very page from *Neder* – page 19 – which contains the reasoning underpinning this federal jury trial rights argument:

7

> As held in Neder, where the record contains no evidence that "could rationally lead to a contrary finding with respect to the omitted element . . . holding the error harmless does not 'reflect a denigration of the constitutional rights involved.'" 527 U.S. at 19, quoting, Rose v. Clarke, 478 U.S. 570, 577 (1986). The case at bar is not such a case.

Id. at 17 fn..7; R.1099 (emphasis supplied).[4]

Not only, then, did Green explicitly *claim* to the SJC that the Appeals Court had violated his substantive constitutional rights by failing to adhere to the harmless error standard prescribed by the Supreme Court, and not only did he explicitly and extensively rely on federal constitutional precedent – *Chapman and Neder*, but Green presented the SJC with a fully developed *argument* as to his claim. Green's Supplement to his ALOFAR more than satisfied the First Circuit's exhaustion requirements as to Ground Four.[5]

---

[4] As demonstrated *supra*, this sentence was not, as Respondent urges, "[A]n isolated federal-law bloom in a garden thick with state-law references[.]" (Resp. Mem. in Support of Mot. to Dismiss at 6) (quoting *Nadworny*, 872 F.2d at 1101). It was, rather, the culmination of a methodically developed argument predicated *solely* on and bolstered with explicit references to federal constitutional law. Equally unavailing is respondent's suggestion that "there was no reason for the SJC to interpret the reference to a jury trial as a federal claim." (Resp. Mem. in Support of Mot. Dism. at 7). *Neder* was a federal criminal prosecution involving the district court's failure to charge the jury on an element of the offense, and the question before the Suprme Court was whether the *Chapman* harmless error analysis could be applied to the violation without infringing on the defendant's jury trial rights. The "jury guarantee" referred to in *Neder's* discussion of the *Chapman* standard is clearly the *federal jury-trial right, not some state's jury trial right.* See also dissenting opinion of Justice Scalia in *Neder*, 527 U.S. at 30-40 (reciting the history of the Sixth Amendment right to a jury trial).

[5] Any reasonable reading of Green's Supplement to his ALOFAR reveals that Green fairly presented Ground Four to the SJC. In its specificity and completeness, Green's pleading far surpasses other pleadings held in this Circuit to have satisfied the exhaustion requirement. *See Scarpa*, 38 F.3d at 8 ("To be sure, petitioner failed to cite directly to [any] federal precedent in his journey through the state appellate process. In our view, however, this omission is not fatal."); *Nadworny*, 872 F.2d at 1099 & 1101 n.4 ("[A] wooden rule which unfailingly denies exhaustion if no federal cases were cited stateside seems to us too restrictive …. [W]e decline to accord talismanic effect to the absence of such citation. There is no bright-line test."); *Brady v. Ponte*, 705 F. Supp. 52, 54 (D.

8

Respondent's assertions that Green "did not argue that the Appeals Court's ruling violated the federal constitution in any way" (Resp. Mem. in Support of Motion to Dismiss at 3), and "did not raise a constitutional claim against the Appeals Court [with the SJC]" (Id., at 3) are specious. Respondent ignores that the Appeals Court found the underlying error to be a violation of Green's federal due process rights, and further ignores the substance of *Chapman, Neder*, and the other Supreme Court decisions cited by Green to the Appeals Court and the SJC which describe and delineate the federal constitutional dimensions of the *Chapman* rule.

The erroneous application of the harmless error standard required by *Chapman* and its progeny cannot be divorced from the underlying constitutional error found by the Appeals Court. Where, as here, an appellate court errs in applying the *Chapman* standard, it fails to comply with clearly established and constitutionally compelled federal law, and thereby deprives the defendant of a remedy for the underlying federal constitutional violation – in this case the federal due process violation found by the Appeals Court. As expressed by the Supreme Court, "the Constitution requires state courts to apply a stricter, Chapman-type standard of 'harmless error' when they review a conviction directly." *California v. Roy, 519 U.S. 2, 5 (1996); accord, Kimmelman v. Morris*, 477 U.S. 365, 382 n. 7 (1986) ("the harmless error standard of *Chapman* . . . requires the state to prove that the defendant was not prejudiced by the error" when claim

---

Mass. 1988) (concluding that *either* using the catchphrase "ineffective assistance of counsel" *or* citing state cases containing federal constitutional analysis may alone be sufficient to exhaust a 6th-Amendment ineffective assistance claim); *Clay v. Vose*, 599 F. Supp. 1505, 1510 (D. Mass. 1984) (holding that petitioner exhausted Sixth Amendment confrontation-clause claim even though he neither mentioned the Sixth Amendment nor cited a single federal case in support that claim; petitioner repeatedly designated it a "right to confrontation" claim and cited state caselaw containing federal constitutional law analogies).

9

is presented on direct review). The Supreme Court made this clear at the outset in *Chapman* itself, holding that (1) a constitutional error may, "<u>consistent with the Constitution</u>, be deemed harmless," *id.*, 386 U.S. at 22 (emphasis supplied), only if the State can "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," *id.* at 24, and (2) this standard is binding on the states as a matter of federal law:

> Whether a conviction for a crime should stand when a State has failed to accord federal constitutional rights is every bit as much of a federal question as what particular federal constitutional provisions themselves mean, what they guarantee, and whether they have been denied. With faithfulness to the constitutional union of the States, we cannot leave to the States the formulation of authoritative laws, rules and remedies designed to protect people from infractions by the States of federally guaranteed rights.

*Chapman*, 386 U.S. at 21. Indeed, the Supreme Court recently reaffirmed without question that the standard mandated by *Chapman* and *Neder* is "clearly established federal law," and that a claim involving a state court's erroneous application of the *Chapman-Neder* standard is an error of federal law that is cognizable in *habeas* proceedings. *See Mitchell v. Esparza*, ___U.S.___, 124 S.Ct. 7 (2003) (per curiam) (holding that *Chapman-Neder* standard is clearly established federal law and reviewing in a § 2254 *habeas* proceeding the Ohio State Supreme Court's conclusion that error was harmless).[6] Moreover, as described above, Green cited *Neder*, quoted from *Neder*, and presented detailed argument for why the Appeals Court's erroneous application of *Chapman* in this case deprived him of his federal jury trial rights. In this case, Green's arguments to the SJC concerning the *Chapman*-Neder error presented claims that were

---

[6] *See* 28 U.S.C. § 2241(c)(3) (allows habeas relief where prisoner is "in custody in violation of the Constitution or laws or treaties of the United States").

10

"so substantively federal" that "a prototypical (reasonable) jurist" could not have understood otherwise.

Finally, even though Green did not explicitly reference in the Supplement to his ALOFAR "the state Court's Article VI Supremacy Clause duty to uphold the federal constitution," (Resp. Mem in Support of Motion to Dismiss. at 7), his reference to Article VI's Supremacy Clause does not render Ground Four unexhausted. Rather, this reference merely alludes to the failure of the Appeals Court and the SJC to follow the Constitution, and the fundamental purpose of the federal habeas process: "to rescue those in custody from the failure to apply federal rights[.]" *Nadworny*, 872 F.2d at 1096. As explained *supra*, Green fully alerted the SJC to his claim that the Appeals Court had, by misapplying *Chapman* and *Neder*, failed to perform its Article VI duty to uphold the federal constitution. In his habeas petition, Green merely put in words what he had already argued in substance to the SJC, and citation in state court to the Supremacy Clause's general duty to uphold the Constitution is not required to exhaust Constitutional claims. This Court, therefore, should not accept Respondent's invitation to ignore the First Circuit's admonition that, insofar as exhaustion is concerned, "[t]he proper search is a search for the heart of the matter, not for ritualistic formality." *Nadworny*, 872 F.2d at 1097.

Here, the underlying federal due process violation found by the Appeals Court, coupled with Green's citations to *Chapman* and *Neder* and his detailed argument that the Appeals Court's erroneous *Chapman* analysis violated his federal rights to have the jury decide his guilt, were more than sufficient to apprise the SJC of the federal nature of his

11

claims. In these circumstances, there can be no question that Green exhausted Ground Four.

## CONCLUSION

For the foregoing reasons, Green has satisfied the exhaustion requirements with respect to Ground Four. Accordingly, Respondent's Motion to Dismiss should be DENIED.

In the event this Court concludes Ground Four is unexhausted, it should grant Green leave with sufficient time within the period of limitations to amend his petition to amend or remove that Ground. *See Nowaczyk v. Warden*, 299 F.3d 69, 76 (1st Cir. 2002) ("[A] state prisoner who has both exhausted and unexhausted claims can obtain prompt federal review of the unexhausted claims if he files a mixed petition and then amends it to remove the unexhausted claims."); *Laurore v. Spencer*, 267 F. Supp. 2d 131, 133 (D. Mass. 2003) (denying government's motion to dismiss mixed petition and staying proceedings until petitioner either files Motion to Amend his petition to drop the unexhausted claims within 30 days of the date of the order or files a new petition after proper exhaustion of state-court remedies); *Rosado v. Allen*, 2003 U.S. Dist. LEXIS 4267, *11 (Mar. 20, 2003) ("Because [petitioner's] habeas petition ... contains both exhausted and unexhausted claims, I will grant [petitioner] leave to amend his habeas petition to present only exhausted claims to this court.").

DATED: July 16, 2004

                                              Respectfully submitted,

                                              Philip G. Cormier
                                              BBO#554515

                                              Matthew P. Zisow
                                              BBO#658726
                                              Good & Cormier
                                              83 Atlantic Avenue
                                              Boston, MA 02110
                                              Tel. 617-523-5933
                                              Fax. 617-523-7554

                                              *Counsel for Willie Green*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2004, I caused a copy of the above document to be served by first class mail, postage pre-paid, to Assistant Attorney General Natalie Monroe, Office of the Attorney General, One Ashburton Place, Boston, MA 02108-1598.

DATED: July 16, 2004

                                              Philip G. Cormier

G:\CLIENTS\Green\Federal Habeas\Petitioner's Opp to Mot to Dismiss FINAL.doc