UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2004-10360

WILLIE GREEN,
Petitioner

V.

CAROL MECI,
Respondent

**FINDINGS AND RECOMMENDATIONS ON
THE RESPONDENT'S MOTION TO DISMISS
THE PETITION FOR A WRIT OF HABEAS CORPUS
(DOCKET # 12)**

ALEXANDER, M.J.

The petitioner, Willie Green ("the petitioner"), filed a petition for habeas relief arising from his conviction for the voluntary manslaughter of Lamont Jones ("Mr. Jones"), at whom the petitioner purportedly fired a gun in response to gunfire from the decedent. The respondent moves to dismiss the petition on the grounds that Ground Four of the petition was never presented to the Supreme Judicial Court of Massachusetts ("SJC"), and therefore ground four constitutes an unexhausted claim that may not be adjudicated by this Court. The District Court (Tauro, J.) referred the case here for Findings and Recommendations on the disposition of that motion. After fully considering the analyses presented in the parties' papers, for the reasons set forth more fully below, the Court RECOMMENDS that the District Court DENY the Motion to Dismiss Petition for Habeas Corpus (Docket #12).

**Relevant Factual Background**

On the afternoon of January 10, 1998, the petitioner visited the apartment of a friend, Michael Burton ("Mr. Burton"), located on the third floor of 83 Hutchins Street in Boston. He told Mr. Burton that Mr. Jones had just fired a gun at him in front of the building.[1] The petitioner spent the rest of the afternoon going between Mr. Burton's apartment and a relative's apartment on the first floor. During that time, the petitioner spoke with Mr. Burton about his concern that his "beef" with Mr. Jones was "starting to heat up, starting to become serious." He also told Mr. Burton that he thought that Mr. Jones was at the home of Traci Coplin ("Ms. Coplin"), a nearby residence also located on Hutchins Street.

On one occasion during the afternoon, Mr. Burton left the building. When he returned, he observed the petitioner and another man, whom Mr. Burton knew as "Mike," in the front entryway. Mr. Burton saw Mike hand the petitioner a .38 caliber firearm, which the petitioner then stuck in his waistband. The petitioner returned to Mr. Burton's apartment and positioned himself on the couch so that he could look out a window that faced Hutchins Street. At one point, the petitioner called Mr. Burton to the window and indicated that Mr. Burton's friend, Mark Roberts ("Mr. Roberts"), was outside. Mr. Burton and the petitioner went downstairs to see Mr. Roberts.

---

[1] Testimony at the trial indicated that Mr. Jones was a large, muscular man, about 6' 4" tall and weighing around 250 pounds. The defendant, apparently, was significantly smaller. Several witnesses testified that Mr. Jones had a reputation for violence, and that it was well known in the neighborhood that he had served time in prison.

As Mr. Burton walked out the front door of the apartment, Mr. Roberts was across the street walking his dog. Mr. Burton then noticed another man coming toward him from the left, on the same side of the street as Mr. Burton's residence. Mr. Burton turned toward the approaching man, realized that it was Mr. Jones, and exclaimed, "Oh shit, there he is." At that point, the petitioner was standing behind Mr. Burton on the steps of the building. More specifically, it appears that Mr. Burton had his right hand on the railing on the right side of the front steps and that the petitioner was behind Mr. Burton and to the left, with his hand on the knob of the open front door. Mr. Jones continued to approach petitioner, saying "What's up?" before pulling out a gun. Mr. Jones then opened fire, shooting at Mr. Burton and the petitioner.

The petitioner, using the front door as a shield, returned fired with his own weapon from behind the door.[2] The petitioner continued to shoot as he backed away from the doorway, and Mr. Burton, now inside the building, tried to pull the defendant into the entryway from behind. After Mr. Burton and the petitioner returned into the entryway of the residence. Mr. Jones turned, took three steps, and then collapsed face down on the sidewalk. He was pronounced dead a short time later at a local hospital. The petitioner was arrested subsequently and charged with the murder of Mr. Jones.

**Procedural History**

At trial, the petitioner requested jury instructions on the theories of both self-

---

[2]Mr. Jones fired eight or nine shots and the petitioner fired between four and six rounds.

defense and defense of another. The trial judge agreed to give the self-defense instruction but declined to instruct on defense of another. The jury returned a verdict of voluntary manslaughter, rejecting the Commonwealth's argument that the petitioner had shot Mr. Jones with malice and deliberate premeditation.

The petitioner argued in his state court appeal that the trial court committed reversible error by refusing to instruct the jury on defense of another and that this error violated his state and federal constitutional rights in three separate ways: (1) he was deprived of his due process rights to have the jury consider a credible defense; (2) he was deprived of the due process requirement that the Commonwealth prove him guilty beyond a reasonable doubt; and, (3) he was deprived of his due process and jury trial rights to have the jury, and not the trial court, decide his guilt.[3] The petitioner further argued that because he was deprived of a substantial defense, the error should be considered a "structural defect" in the trial mechanism that was *per se* prejudicial and required automatic reversal, but even if the error was not a structural defect, reversal was required under the harmless error standard established by Chapman v. California, 386 U.S. 18, 24 (1967), and its progeny.

The Appeals Court agreed that the trial court had erred, but did not reverse petitioner's conviction. Instead, the Court applied the Massachusetts standard of review

---

[3] The petitioner also raised in his state court appeal another claim of error relating to supplemental jury instructions concerning the definition of "malice" and "voluntary manslaughter mitigating factors." This claim is not at issue here.

4

that is applied to non-constitutional errors and held that the error was non-prejudicial. See Commonwealth v. Mejia, 407 Mass. 493, 497, 554 N.E.2d 1186, 1189 (1990); Commonwealth v. Martinez, 37 Mass. App. Ct. 948, 951, 641 N.E.2d 1360, 1363 (1994).

Subsequently, the petitioner petitioned for rehearing in the Appeals Court arguing, as he had previously, that the failure to instruct on defense of another violated his federal constitutional rights, and that even if the error was not a structural defect that was *per se* prejudicial, he was nonetheless entitled to a new trial under the harmless error standard of Chapman and its progeny, as opposed to the so-called "prejudicial error" standard that is applied by the state courts to non-constitutionally based errors. The Appeals Court denied the petitioner's petition for rehearing, but modified its July 5, 2002 opinion. In response to the Commonwealth's assertion that the Appeals Court had misstated the standard for evaluating non-constitutional error, the Appeals Court corrected its description of the non-constitutional harmless error standard and added a footnote at the end of its prejudicial error analysis that the Commonwealth proved that the error was harmless beyond a reasonable doubt and did not contribute to the verdict obtained in accordance with Chapman.

The petitioner filed an Application for Further Appellate Review ("ALOFAR") with the SJC as well as a supplement to his ALOFAR that was filed after the Appeals Court denied rehearing and modified its first decision. On June 26, 2003, the SJC denied further appellate review without opinion.

## ANALYSIS

The petitioner's habeas petition contains four grounds for relief, one of which is implicated by the instant motion to dismiss for want of exhaustion. Ground four alleges that the Appeals Court's ruling (a) constitutes "a continuing violation" of the petitioner's constitutional rights to due process; and (b) abridged the petitioner's right to have the jury, and not the courts, determine his guilt; and (c) offended the state's Article VI duty to uphold the federal constitution. The respondent claims that the petitioner failed to properly exhaust his state court remedies before seeking habeas relief. More specifically, the respondent avers that the petitioner never presented ground four to the SJC, and thus, the petition should be dismissed for want of exhaustion as required by 28 U.S.C. §2254.[6]

It is well-settled that "a federal court will not entertain an application for habeas

---

[6]Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a court confronted with unexhausted claims may, in its discretion, dismiss the petition as unexhausted, or deny the petition on the merits. *See* 28 U.S.C. §2254 (b)(1)-(2) ("an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.") 28 U.S.C. §2254 provides in pertinent part:

> (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application." Adelson v. DiPaola, 131 F.3d 259, 261 (1st Cir. 1997) (citing Rose v. Lundy, 455 U.S. 509, 518-519 (1982).). *See also* Picard v. Connor, 404 U.S. 270, 276 (1971); 28 U.S.C. §2254(b)(1)-(2). In addition to ensuring that state courts have the first opportunity to correct constitutional errors, the exhaustion requirement enables federal courts to accord appropriate respect to the sovereignty of the states and thus promotes comity by "minimiz[ing] friction between our federal and state systems of justice...." Duckworth v. Serrano, 454 U.S. 1, 3 (1981).

A habeas petitioner "must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim, to satisfy the exhaustion requirement." Anderson v. Harless, 459 U.S. 4, 6 (1982). Specifically, the petitioner must present the substance of his federal habeas claim to the state's highest tribunal. Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987). *See also* Mele v. Fitchburg District Court, 850 F.2d 817, 819 (1st Cir. 1988) (as precondition to bringing a habeas petition, petitioner must first present his federal claims to the state's highest court). In Massachusetts, with respect to state convictions,

> an appealed issue cannot be considered as having been fairly presented to the SJC for exhaustion purposes unless the applicant has raised it within the four corners of the application for further appellate review.

Id. at 823.

Additionally, unless the petitioner first fully exhausts his state remedies in respect to each and every claim contained within the application, in general, a federal court will

not entertain a petition for habeas relief. Rose, 455 U.S. at 522.[7] The petitioner bears the burden of demonstrating satisfaction of the exhaustion requirement. *See* Adelson, 131 F.3d at 262; Nadworny v. Fair, 872 F.2d 1093, 1098 (1st Cir. 1998). To carry that burden, the petitioner must show that "he tendered his federal claim [to the state's highest court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of a federal question." Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000). Although the Supreme Court makes clear that a federal claim is not exhausted merely because the facts that underlie it were previously placed before the state's highest court, *see* Picard, 404 U.S. at 277, a petitioner need not express his federal claims in precisely the same terms in both the state and federal courts. *See, e.g.*, id. at 277-78 (holding that the claims advanced by a habeas petition before the state's highest court must be the "substantial equivalent" of those raised in his or her federal habeas petition).

The First Circuit notes that there are a myriad of ways in which a petitioner might satisfy his or her obligation to fairly present a federal constitutional issue to the state's highest court. They include:

(1) citing a specific provision of the Constitution;
(2) presenting the substance of a federal constitutional claim in such a manner that it likely alerted the state court to the claim's federal nature;
(3) reliance on federal constitutional precedents; and

(4) claiming a particular right specifically guaranteed by the Constitution.

Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987) (citing Dougan v. Ponte, 727 F.2d 199, 201 (1st Cir. 1984).)

This list, while illustrative, does not purport to be exhaustive. For example, in Nadworny, the court recognized that there "is yet another species of exhaustion which merits attention. An individual's claim, arising under and asserted in terms of state law, may, as a practical matter, be indistinguishable from one arising under federal law." 872 F.2d at 1099. A recent First Circuit decision, Barresi v. Maloney, 296 F.3d 48 (1st Cir. 2002), highlights what constitutes adequate presentation of a constitutional issue to state courts.

In Barresi, the court elucidated that each case in which a petitioner is alleged to inadequately present his or her constitutional claims to the state's highest court is fact-driven and unique, turning on its own circumstances. Id. See also Adelson, 131 F.3d at 262 (observing that "our *de novo* appellate review of a district court's dismissal of a habeas petition for want of exhaustion is necessarily case specific"); Nadworny, 872 F.2d at 1101. Under Barresi and other First Circuit decisions, in determining whether a petitioner presented his or her federal claims to the state's highest court, the court considers issues of probability – whether it is more likely than not that a reasonable jurist would recognize the constitutional dimensions of the petitioner's claims, given the manner in which those claims were presented.

In order to resolve the question, this Court finds decisive the ALOFAR submitted to the SJC by the petitioner. *See* Adelson, 131 F.3d at 263. The Court, more specifically, must reconcile whether the petitioner fairly presented the federal claim to the SJC within "the four corners" of that application. *See* Mele, 850 F.2d at 823.

The crux of ground four is that the Appeals Court's alleged erroneous application of the harmless error standard prescribed and required by Chapman and Neder v. U.S., 527 U.S. 1, 19 (1999), constituted a continuing violation of the petitioner's federal constitutional rights to due process and a jury trial because (1) the underlying substantive federal constitutional error, as found by the Appeals Court, was that the failure to instruct on defense of another violated the petitioner's federal constitutional rights to due process; (2) the Appeal's Court's erroneous application of the Chapman and Neder harmless error standard, which is clearly established federal law grounded in the federal constitution, deprived the petitioner of a remedy for the underlying federal due process violation and thereby negated the petitioner's substantive federal constitutional rights, and (3) the Appeals Court violated the petitioner's federal jury trial rights to have the jury and not the courts decide his guilt by concluding that the error was harmless beyond a reasonable doubt, although there was evidence which the Appeals Court itself stated could rationally lead a jury to a contrary finding.

The violation claimed in ground four arose on April 10, 2003, when the Appeals Court denied the petitioner's petition for rehearing and modified its earlier July 5, 2002

opinion.[8] In its July 5, 2002 opinion, the Appeals Court concluded that the trial court committed federal constitutional error in declining to give defense-of-another instruction, but evaluated whether "the absence of such an instruction constituted prejudicial error."

The petitioner filed a petition for rehearing in the Appeals Court on July 18, 2002 arguing, *inter alia*, that because the trial court's error was a federal constitutional error, pursuant to Supreme Court case law, "the [Appeals] Court should have evaluated [that] error using the harmless beyond a reasonable doubt standard [articulated in Chapman], and Neder.[9] On July 25, 2002, while his petition for rehearing was pending, the petitioner filed his ALOFAR with the SJC arguing that the Appeals Court erred in not applying the Chapman and Neder standard to the trial court's erroneous omission of the defense of another instruction.

On April 10, 2003, the Appeals Court denied the petitioner's petition for rehearing and modified its July 5, 2002 opinion. The Appeals Court added the following footnote to its July 25, 2002 opinion:

> Even considering the trial judge's failure to instruct on defense of another to be error of constitutional dimension, in these circumstances we determine that the Commonwealth proved that the error was harmless beyond a

---

[8]The Appeals Court seemingly recognized that the error was a federal constitutional error that relieved the Commonwealth of its due process burden of disproving defense of another beyond a reasonable doubt, and cited directly to pages from two SJC decisions that discussed this federal due process requirement and directly relied on the Supreme Court's decisions in Mullaney v. Wilbur, 421 U.S. 684 (1975), and In re Winship, 397 U.S. 358 (1970).

[9]See Order of the Massachusetts Appeals Court, July 5, 2002, at ¶7.

11

reasonable doubt and 'did not contribute to the verdict obtained.'

After the Appeals Court modified its July 5, 2002 opinion, by adding the <u>Chapman</u> footnote, the petitioner filed in the SJC a supplement to the ALOFAR, asserting that the Appeals Court misapplied <u>Chapman</u>. The petitioner also quoted <u>Neder</u> at length for the proposition that, consistent with the Sixth Amendment, where a defendant contested the omitted element and raised evidence sufficient to support a contrary finding, a reviewing court should not find the error harmless.

Based upon the petitioner's recitation of his claims in the ALOFAR, this Court FINDS the petitioner satisfies the exhaustion requirement. In so FINDING, the Court looks specifically to the holding outlined in <u>Dougan</u>, and concludes that the petitioner demonstrate that he fairly presented to the state courts the substance of his federal habeas corpus claim sufficient to satisfy the exhaustion requirement. Most obviously, the petitioner expressly cites the Sixth and Fourteenth Amendments. Moreover, he presents the substance of his constitutional claim in a manner which a reasonable juror should understand to invoke the claim's federal nature: he refers to due process doctrines guaranteed by the United States Constitution and relies on Supreme Court cases to support his proposition that his constitutional rights were violated. The petitioner demonstrated with sufficient detail that the underlying federal due process violation found by the Appeals Court, coupled with his citation to <u>Chapman</u> and <u>Neder</u> and given his detailed argument that the Appeals Court's erroneous <u>Chapman</u> analysis violated his

federal rights to have the jury decide his guilt, were more than sufficient to apprise the SJC of the federal nature of his claims.

Accordingly, this Court RECOMMENDS that the respondent's Motion to Dismiss be DENIED.[10]

SO ORDERED.

_8/19/04_
Date

_/s/ Joyce London Alexander_
United States Magistrate Judge

**NOTICE TO THE PARTIES**

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this proposed report and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. See *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). See also *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111, 106 S. Ct. 899, 88 L.Ed. 933 (1986).

---

[10]In the alterative, this Court agrees with the respondent that in the event the District Court disagree with this Court by concluding that ground four is unexhausted, the District Court should grant the petitioner leave to amend his petition to amend or remove that ground in accordance with <u>Nowaczyk v. Warden</u>, 299 F.3d 69, 76 (1st Cir. 2002) ("a state prisoner who has both exhausted and unexhausted claims can obtain prompt federal review of the unexhausted claims if he files a mixed petition and then amends it to remove the unexhausted claims.").