# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
**WILLIE GREEN,**                       )
                          **Petitioner,**   )    **Civil Action No. 04-10360-JLT**
                                        )
            **v.**                      )
                                        )
**CAROL MECI,**                         )
                                        )
                          **Respondent.**   )
_____)

## PETITIONER WILLIE GREEN'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF HIS PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner Willie Green hereby submits this supplemental memorandum of law in support of his petition for habeas relief, and in aid of this Court's disposition of his petition. On February 23, 2004, Mr. Green filed his habeas petition, accompanied by an opening memorandum of law. *See* Memorandum of Law in Support of Willie Green's Petition for Post-Conviction Relief Pursuant to 28 U.S.C. §§ 2241 and 2254 (hereafter "Green's Opening Mem.").[1] Respondent subsequently filed for dismissal, asserting that Green had failed to exhaust all of the claims set forth in his petition. The Court denied Respondent's motion to dismiss, adopting the Findings and Recommendations of the Magistrate Judge. *See* 10/27/04 Order (Tauro, J.) and 8/19/04 Findings and Recommendations on the Respondent's Motion to Dismiss (Alexander, M.J.).

---

[1] For the sake of brevity, this Supplemental Memorandum makes numerous references to Green's Opening Mem., and should be read in conjunction therewith.

## ARGUMENT

**I.      The Federal Claims Raised in Mr. Green's Petition.**

Mr. Green has raised four federal claims in his petition, all of which arise directly or indirectly from the refusal of the trial judge to instruct the jury on defense of another.[2]

(1)  The refusal to instruct on defense of another violated Mr. Green's federal constitutional due process rights to present a defense established under Massachusetts law;

(2)  The refusal to instruct on defense of another violated Mr. Green's federal due process rights and his Sixth Amendment jury trial rights to have the jury determine his guilt;

(3)  The refusal to instruct on defense of another violated Mr. Green's federal constitutional due process rights by relieving the Commonwealth of the burden of having to prove Mr. Green's guilt beyond a reasonable doubt; and,

(4)  The Massachusetts Appeals Court's determination that the underlying constitutional violation (violation of the due process requirement that the Commonwealth prove Mr. Green's guilt beyond a reasonable doubt) was harmless beyond a reasonable doubt constituted a continuing and further violation of Mr. Green's federal constitutional rights because the error (a) deprived Mr. Green of a remedy for the underlying violation of the substantive due process violation; (b) deprived Mr. Green of his federal constitutional rights to have the jury determine his guilt; and, (c) violated the requirement

---

[2]  The facts and procedural history undergirding these claims are set forth in Green's Opening Mem. at pp. 4-15.

that state courts uphold the Federal Constitution pursuant to Article VI of the

Constitution.

II.    **The Standards for Reviewing Mr. Green's Federal Claims.**

While all of the above-described claims arise from the trial court's erroneous

refusal to instruct on defense of another, not all of these claims were adjudicated on the

merits by the state courts, and hence, the unadjudicated claims are subject to *de novo*

review by this Court.  Pursuant to the AEDPA, a habeas petition may not be granted

"with respect to any claim that was adjudicated on the merits in state court proceedings,"

unless the decision of the state court was (1) "contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court of the

United States" or (2) "was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).   It is well

settled that where the state courts have not decided the federal constitutional claim, the

claim has not been "adjudicated on the merits" within the meaning of § 2254, and the

claim must be reviewed *de novo* by a federal habeas court.  *Fortini v. Murphy,* 257 F.3d

39, 47 (1st Cir. 2001) (deferential review prescribed in § 2254(d) does not apply to

constitutional claims not addressed by the state courts); *DiBenedetto v. Hall,* 272 F.3d 1,

6-7 (1st Cir. 2001) (same).

Here, the first two of Mr. Green's federal claims arising from the refusal to

instruct on defense of another were clearly <u>not</u> <u>adjudicated</u> by the Appeals Court or by

the Supreme Judicial Court:  (1) The claim that the error violated Mr. Green's federal due

process rights to present a defense established under Massachusetts law, and (2) the claim

that the error violated his due process and Sixth Amendment rights to have the jury

determine his guilt. *See* Brief of Willie Green, 11/8/00, filed with the Appeals Court at 30-32/R.868-870;[3] Application for Further Appellate Review, 7/25/02, filed with the SJC at 20/R.1062, and Green's Supplement to his Application for Further Appellate Review, filed with the SJC, 5/2/03, at 6-7/R.1088-1089. The Appeals Court did not refer to, discuss, or analyze, either of these two federal claims in its opinion in which it denied Mr. Green a new trial, *see Commonwealth v. Green,* 55 Mass. App. Ct. 376 (2002) (as amended), and the SJC denied Mr. Green's application for further appellate review without any opinion. *See Commonwealth v. Green,* 439 Mass. 1109 (2003). Because there was no state court determination as to these two claims, they must be reviewed *de novo.*

Mr. Green's third claim -- that the failure to instruct on defense of another violated Mr. Green's due process rights by relieving the Commonwealth of the burden of having to prove every element of the offense of conviction beyond a reasonable doubt -- was adjudicated and decided by the Appeals Court in Mr. Green's favor.[4]

Finally, Mr. Green's Fourth claim – that the Appeals Court's *Chapman* harmless error finding violated the Supreme Court's ruling in *Neder* – was not adjudicated by the Appeals Court or the SJC, and thus should be reviewed *de novo.*[5] While the Appeals

---

[3]  "R.[page number]" references the Record Appendix filed by Green with his petition.

[4]  The Appeals Court decided this claim in Mr. Green's favor, finding that (1) Mr. Green presented sufficient evidence entitling him to a defense of another instruction, (2) there were sufficient facts from which the jury could have found that he acted in defense of another, and (3) the refusal to instruct on defense of another violated Mr. Green's federal due process rights by relieving the Commonwealth of its burden of disproving defense of another beyond a reasonable doubt. *See* discussion at 8-9, *infra.*

[5]  As discussed in Section IV, *infra,* in the event that the Court agrees with Mr. Green that the claims not adjudicated by the state courts constitute violations of his federal

Court held in its amended opinion (issued after Mr. Green filed his petition for rehearing in which he pointed out the *Neder* error)[6] that the error was harmless beyond a reasonable doubt under the standard established by the Supreme Court in *Chapman*, see *Green,* 55 Mass. App. Ct. at 381, n.7, the Appeals Court made no reference whatsoever to the Supreme Court's ruling in *Neder,* which held that an error such as occurred here cannot be held harmless where the factual issue is contested and there is sufficient evidence from which a jury could find for the defendant.  Hence, there is no record basis for concluding that the Appeals Court even applied *Neder,* or that it determined that the error could he held harmless under *Neder.*  The *Chapman-Neder* claim was also raised extensively with the SJC,[7] which affirmed the Appeals Court without issuing any opinion.  Alternatively,

---

constitutional rights, it raises the issue of what harmless error standard should be applied to these violations in this habeas proceeding, *i.e.,* the standard set forth in *Chapman v. California*, 386 U.S. 18, 24 (1967), or the standard set forth in *Brecht v. Abrahamson,* 507 U.S. 619 (1993).  It is Mr. Green's position that the *Chapman* standard, not the *Brecht* standard, should apply to claims that were not adjudicated by the state courts, but that even if the more prosecution-friendly *Brecht* standard applies, habeas relief must be granted in this case because the errors had a "a substantial and injurious effect or influence in determining the jury's verdict." *Id.,* at 638.

[6]  See Mr. Green's Petition for Rehearing filed with the Appeals Court at R. 1014-1015.

[7]  Originally, in its first opinion, the Appeals Court did not even apply the harmless beyond a reasonable doubt standard prescribed by *Chapman*, and instead applied only the harmless error test that applies to non-constitutional errors. R. 994-1004.  In his petition for rehearing filed with the Appeals Court, Mr. Green argued that the Appeals Court had erred in its harmless error analysis, asserting that if the error was not a structural defect, it had to be analyzed under the *Chapman* standard, and that the error could not be held harmless under *Chapman* and *Neder*. R. 1006-1015.  Due to filing deadlines, Mr. Green's Application for Further Appellate Review was filed with the SJC while his petition for rehearing was still pending in the Appeals Court, and the SJC stayed his application for further review pending the Appeals Court's consideration of his rehearing petition.  In his Application for Further Appellate Review, Green argued to the SJC that under *Chapman* and *Neder*, the error could not be found harmless.  R. 1067-1068.  Subsequently, on April 10, 2003, the Appeals Court denied rehearing, but amended its opinion with the footnote holding that the error was harmless under *Chapman,* without

as demonstrated below, even if this Court were to find that the Appeals Court's decision

constituted an adjudication of the *Neder* claim such that the provisions of § 2254(d) apply

to this claim, the Appeals Court's determination was "contrary to" and "involved an

unreasonable application of" clearly established federal law as determined by the

Supreme Court in *Neder.*

### III.    The Substance of the Federal Claims.

#### A.    Mr. Green Was Deprived of His Federal Constitutional Rights to Present a Defense.

As a matter of Fourteenth Amendment due process, "fundamental fairness . . .

require[s] that criminal defendants be afforded a meaningful opportunity to present a

complete defense." *California v. Trombetta,* 467 U.S. 479, 485 (1984). The refusal to

instruct a jury on a defense permitted by state law where the defendant has met the

evidentiary requirements that entitle him to such an instruction violates federal due

process. *See Barker v. Yukins,* 199 F.3d 867, 875 (6th Cir. 1999) (failure to instruct jury

that defendant had right to use deadly force if she believed rape was imminent violated

federal due process); *Davis v. Strack,* 270 F.3d 111, 131-132 (2d Cir. 2001) (failure to

instruct on self-defense violated defendant's federal due process rights); *Bradley v.

Duncan,* 315 F.3d 1091, 1098-1099 (9th Cir. 2002) (failure to instruct on duress-

entrapment violated defendant's due process rights under the Fourteenth Amendment);

*McNeil v. Middleton,* 344 F.3d 988, 995-997 (9th Cir. 2003) (erroneous instruction that

precluded jury from considering whether defendant had acted with imperfect self defense

---

any mention of *Neder.* R. 1040. On May 2, 2003, as a direct result of the Appeals
Court's amended decision, Green filed his Supplement to his Application for Further
Appellate Review in which he argued to the SJC that the Appeals Court's amended ruling
was erroneous because it failed to adhere to the *Chapman* and *Neder* standards, and the
error could not be held harmless under *Chapman* and *Neder.* R.1090-1099.

6

violated defendant's rights present a defense under the Fifth and Sixth Amendments).

Here, Mr. Green was deprived of his rights to a present what was an absolute defense to

the manslaughter charge of which he was convicted  -- *i.e.,* whether he had acted with

lawful justification in defense of his friend -- which would have required his acquittal if

not disproved beyond a reasonable doubt.  *Commonwealth v. Johnson,* 412 Mass. 368,

371-372 (1992) ("a defendant who is justified in using deadly force for the protection of a

third person is relieved of all criminal liability") (emphasis supplied).

**B.     Mr. Green Was Deprived of His Federal Rights to Have a Jury, and not a Court, Determine Whether He was Innocent or Guilty of Manslaughter.**

In addition to the right to present a defense, due process and the Sixth

Amendment jury trial right "require criminal convictions to rest upon a jury

determination that the defendant is guilty of every element of the crime with which he is

charged, beyond a reasonable doubt." *United States v. Gaudin,* 515 U.S. 506, 510 (1995)

(emphasis supplied) (citing to Fifth and Sixth Amendments).  *See also, Blakely v.

Washington,* ___U.S.___, 124 S.Ct. 2531, 2543 (2004) ("every defendant has the *right* to

insist that the prosecutor prove to a jury all facts legally essential to the punishment")

(italics in original); *Apprendi* v. *New Jersey,* 530 U.S. 466, 477 (2000) (citing to

Fourteenth Amendment due process clause and Sixth Amendment right to jury trial on

sentencing facts); *Neder, supra,* 527 U.S. at 17-19; *United States v. United States

Gypsum, Co.,* 438 U.S. 422, 446 (1978) (jury instruction that precluded jury from

considering the issue of intent improperly invaded jury's factfinding function).  *Cf.

Watkins v. Murphy,* 292 F.3d 70, 75-76 (1st Cir. 2002) (defendant raised federal due

process claim for purposes of § 2254 jurisdiction by asserting that supplemental jury

instructions had the effect of removing an issue from the jury that needed to be proven beyond a reasonable doubt).  As described in Green's Opening. Mem. at 21, the Appeals Court itself recognized that "'it is the jury's function to assess the credibility of the evidence in light of correct principles of law as delivered to them by the trial judge if there is some evidential basis for the [defense of another] claim.'"  *Commonwealth v. Green, supra,* 55 Mass. App. Ct. at 379, *quoting, Commonwealth v. Deagle,* 10 Mass. App. Ct. at 750.  In this case however, the trial jury was never permitted to carry out this important constitutional function because the trial judge refused to instruct the jury on defense of another.  As result, Mr. Green was deprived of his federal constitutional rights to have the jury, not the trial court, determine whether he had acted with lawful justification in defense of another.

> **C.    The Trial Court's Refusal to Instruct on Defense of Another Violated the Due Process Requirement that the Commonwealth Disprove Defense of Another Beyond a Reasonable Doubt.**

The Appeals Court held that the refusal to instruct on defense of another violated Mr. Green's federal due process rights by relieving the Commonwealth of its obligation to disprove defense of another beyond a reasonable doubt.  As recognized by the Appeals Court, defense of another is a well established common law defense in Massachusetts, *see Commonwealth v. Martin,* 369 Mass. 640, 649 (1976), and once a defendant has raised sufficient evidence of the defense, he "is entitled to an instruction that places on the Commonwealth the burden of disproving the particular defense [referring to self-defense and defense of another] beyond a reasonable doubt." *Commonwealth v. Green,* 55 Mass.App.Ct. at 379*, citing Commonwealth v. Rodriguez, 370 Mass. 684, 687-688*

*(1976) and Commonwealth v. Maguire,* 375 Mass. 768 (1978) at R.997-998.[8]  *See also, Commonwealth v. Colantonio*, 31 Mass. App. Ct. 299, 307 (1991) (the Commonwealth "bears the burden of proof that a defendant did not act in defense of another"), *citing, Commonwealth v. Martin*, *supra, 369 Mass.* at 650.  Put somewhat differently, upon raising defense of another by sufficient evidence, unlawfulness (*i.e.*, the absence of justification) becomes an element of the Commonwealth's case which it must prove beyond a reasonable doubt.

The Appeals Court clearly understood and recognized that the error was a violation of Mr. Green's federal due process rights vis-à-vis the Commonwealth's burden of proving guilt beyond a reasonable doubt.  The very pages that the Appeals Court cited from the SJC's decisions in *Rodriguez* and *Maguire* explicitly discuss the Commonwealth's federal due process burden to prove the absence of defense of another beyond a reasonable doubt and rely directly on the Supreme Court's due process decisions in *In re Winship*, 397 U.S. 358 (1970) and *Mullaney v. Wilbur,* 421 U.S. 684 (1975).  This Court noted that "[t]he Appeals Court seemingly recognized that the error was a federal constitutional error that relieved the Commonwealth of its due process burden of disproving defense of another beyond a reasonable doubt . . . ."  *See* "Findings and Recommendations on the Respondent's Motion to Dismiss the Petition for a Writ of Habeas Corpus," 8/19/04, at 11, n.8.  Given the Appeals Court's findings that Mr. Green was entitled to an instruction on defense of another and its recognition that the refusal to give the instruction violated Mr. Green's clearly established federal due process rights under *In re Winship* and *Mullaney v. Wilbur*, this Court should, in accordance with the

---

[8] "R [page number]" refers to the Record Appendix filed previously with Mr. Green's habeas petition.

federalism and deference principles underlying 28 U.S.C. § 2254, adopt the Appeals

Court's ruling on this claim.

> **D.      The Appeals Court's Application of the Chapman Harmless Error
> Standard in Direct Contravention of the Supreme Court's Decision
> in *Neder* Violated Mr. Green's Federal Constitutional Rights by (1)
> Depriving Him of a Remedy for the Underlying Substantive Violation
> of his Due Process Rights (that the Commonwealth Prove His Guilt
> Beyond a Reasonable Doubt), and (2) Depriving Him of His Rights to
> Have a Jury, and not a Court, Determine Whether he Was Guilty of
> Every Element of the Charged Offense.**

The thrust of Ground Four to Mr. Green's petition is that the Appeals Court's

erroneous application of the harmless error standards prescribed and required by

*Chapman*, *supra,* 386 U.S. at 18 and *Neder, supra,* 527 U.S. at 1, constituted a

"continuing violation" of Green's federal constitutional rights to due process and a jury

trial because (1) the underlying federal constitutional error found by the Appeals Court

was that the failure to instruct on defense of another violated Mr. Green's due process

rights; (2) the *Chapman-Neder* harmless error standards are clearly established federal

law that is grounded in the federal constitution and is binding on the states, and the

Appeals Court's error in applying the *Chapman-Neder* standards deprived Mr. Green of a

remedy for the underlying due process violation, thereby negating his substantive federal

constitutional rights; and, (3) the Appeals Court's erroneous harmless error ruling

deprived Mr. Green of his federal constitutional rights to have a jury, and not the Appeals

Court, decide the contested factual issue of whether he had acted lawfully in his defense

of another.  In addition, the state courts' failure to comply with the specific constitutional

directive (*Chapman* and *Neder*) violated the state courts' Article VI duties to uphold the

federal constitution.  *See Cooper v. Aaron,* 358 U.S. 1 (1958).

In *Neder,* the trial court erred in refusing to charge the jury on the element of materiality in connection with charges of filing false income tax returns.  The Supreme Court held that such an error could be deemed harmless under *Chapman* without running afoul of a defendant's jury trial rights "where a reviewing court concludes beyond a reasonable doubt that the omitted element <u>was uncontested and supported by overwhelming evidence</u>," 527 U.S. at 17 (emphasis supplied), but that "where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding – [the appellate court] should not find the error harmless."  *Id.,* at 19. Under this standard, the Supreme Court held in *Neder* that the trial court's jury charge omission was harmless beyond a reasonable doubt because (1) the prosecution had presented overwhelming evidence at trial of the materiality of Neder's false statements (that he understated his income on two tax returns by a total of more than $5 million), and (2) Neder did not contest the issue of materiality at trial and never presented any contrary evidence.  The Supreme Court found that because there was no contested factual issue to resolve, the verdict would have been the same absent the error, and thus, "'the error did not contribute to the verdict obtained.'"  *Id.,* at 17, *quoting Chapman,* 386 U.S. at 24.

Here, the Appeals Court held that defense of another was a contested issue, that contrary evidence was presented by Mr. Green, and that this evidence was sufficient for the jury to have found that he acted in defense of another, but it applied *Chapman* in a manner that ignored and directly contradicted the Supreme Court's ruling in *Neder*. Rather than vacating Mr. Green's conviction, and remanding the case for a new trial so that a jury, and not the court, could assess and weigh the evidence on the issue of defense of another, the Appeals Court disregarded *Neder's* clearly stated rule and ran afoul of Mr.

Green's federal constitutional jury trial rights by weighing the evidence itself and finding that a jury would not have found that Mr. Green acted in defense of another.

As articulated in Mr. Green's Opening Mem. at 26-32, per *Neder,* it was for the jury and not the trial court or any appellate court to decide whether Mr. Green acted reasonably and was justified in using the level of force that he used to defend Michael Burton by assessing and weighing the facts concerning (1) the gravity and imminency of the harmful threat to Burton, (2) whether Burton was in a more exposed position, (3) whether Burton could have retreated to safety, and (4) what level of force Burton would have been entitled to use to defend himself.

**IV.    In the Event that 28 U.S.C. § 2254(d) Applies to this Case, the Appeals Court's Determination that the Refusal to Instruct on Defense of Another Was Harmless Under the *Chapman* Harmless Error Standard Was Contrary To, And Involved an Unreasonable Application of, Clearly Established Federal Law.**

Pursuant to 28 U.S.C. § 2254 (d)(1), habeas relief may be granted where the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  A state court decision is "contrary to" federal law "if the state court either applies a legal rule that contradicts an established Supreme Court precedent or reaches a different result on facts materially indistinguishable from those of a controlling Supreme Court precedent."  *Ouber v. Guarino,* 293 F.3d 19, 26 (1st Cir. 2003).  Under the "unreasonable application" prong of § 2254(d)(1), habeas relief may be granted when the state court identifies the correct legal principle, but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  This latter prong "also encompasses situations in which the state court either unreasonably extends a legal principle derived from Supreme Court precedent to an

inappropriate context or unreasonably refuses to extend that principle to an appropriate context." *Id.* Here, assuming *arguendo* that the Appeals Court "adjudicated" Mr. Green's *Neder* claim for purposes of triggering § 2254(d), its decision was both "contrary to" and "involved an unreasonable application of" the Supreme Court's ruling in *Neder*.

> **A.     The Harmless Error Standard Established by *Chapman* and *Neder* is Clearly Established Federal Law, as Determined by the Supreme Court.**

There is no question that the standards established in *Chapman* and *Neder* are constitutionally compelled and clearly established federal law that is binding on state courts.  In *Chapman, supra,* 386 U.S. at 18, the Supreme Court first held that, in certain cases, errors of federal constitutional law could be deemed non-prejudicial or harmless if it was demonstrated that there was no "reasonable possibility that the evidence complained of might have contributed to the conviction," *id.,* at 24, *i.e,* "harmless beyond a reasonable doubt." *Id.*  As expressed by the Court, "the Constitution requires state courts to apply a stricter, Chapman-type standard of 'harmless error' when they review a conviction directly."  *California v. Roy, 519* U.S. 2, 5 (1996) (emphasis supplied); *accord, Kimmelman v. Morris,* 477 U.S. 365, 382 n. 7 (1986) ("the harmless error standard of *Chapman* . . . requires the state to prove that the defendant was not prejudiced by the error" when claim is presented on direct review).  The Court made this clear at the outset in *Chapman* itself, holding that (1) a constitutional error may, "consistent with the Constitution, be deemed harmless," *Chapman,* 386 U.S. at 22 (emphasis supplied), only if the State can "prove beyond a reasonable doubt that the error complained of did not

contribute to the verdict obtained," *id.* at 24, and (2) this standard is binding on the states as a matter of federal law:

> Whether a conviction for a crime should stand when a State has failed to accord federal constitutional rights is every bit as much of a federal question as what particular federal constitutional provisions themselves mean, what they guarantee, and whether they have been denied. With faithfulness to the constitutional union of the States, we cannot leave to the States the formulation of authoritative laws, rules and remedies designed to protect people from infractions by the States of federally guaranteed rights.

*Id.,* at 21.

Subsequently, in *Neder, supra,* 527 U.S. at 1, the Supreme Court considered the application of the *Chapman* standard where a trial court erroneously failed to instruct the jury on an element of the offense in violation of the defendant's Sixth Amendment rights to have the jury determine whether he was guilty of all of the elements of the offense. As described above, the Court held that such an error could be found harmless beyond a reasonable doubt under *Chapman* without undermining the jury trial guarantee "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence," *Neder,* 527 U.S. at 17, but that "where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding – [the appellate court] should not find the error harmless." *Id.,* at 19.

More recently, the Supreme Court reaffirmed without question that the standard mandated by *Chapman* and *Neder* is "clearly established federal law," and held that a claim involving a state court's erroneous application of the *Chapman-Neder* standard is an error of federal law that is cognizable in *habeas* proceedings. *See Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curiam) (holding that *Chapman-Neder* standard is clearly

established federal law and reviewing in a § 2254 *habeas* proceeding the Ohio State Supreme Court's conclusion that error was harmless).

      **B.**     **The Appeals Court's Decision Was Contrary to, and Involved an Unreasonable Application of, the *Neder* Standard.**

For the reasons expressed above at 10-12, and for the reasons expressed in Mr. Green's Opening Mem. at 30-31, the Appeals Court's harmless error finding was directly contrary to "established Supreme Court precedent" – namely, the rule established by the Supreme Court in *Neder* governing the application of *Chapman* to situations where a trial court fails to instruct a jury on an element of the charged offense. Given the contested factual issue and the Appeals Court's finding that there was sufficient evidence from which a jury could have found that Mr. Green acted in defense of Michael Burton, the Appeals Court was required by *Neder* to find that the error was not harmless and to remand the issue for consideration by a jury.

Even if for some reason the "contrary to" prong of § 2254(d)(1) is held to be inapplicable here, habeas relief must be granted under the "unreasonable application" prong, because the Appeals Court's harmless error finding clearly involved an unreasonable application of the *Chapman-Neder* standards to the facts of Mr. Green's case. As noted by the First Circuit, "'[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness vel non of the state court's treatment of the contested issue.'" *Ouber, supra,* 293 F.3d at 20, *quoting, O'Brien v. Dubois,* 145 F.3d 16, 25 (1st Cir. 1998). The First Circuit and other federal circuit courts of appeal have recognized and understood that *Neder* precludes a finding of harmless error in circumstances similar to Mr. Green's case.

For example, in *United States v. Bailey,* 270 F.3d 83, 88-90 (1st Cir. 2001), the Court applied and followed *Neder* in a drug conspiracy case where the trial court erroneously failed to submit the factual question of the weight of the drugs to the jury, which was a factual determination that was necessary for the calculation of the defendant's sentence. While the government argued that the Court could find the error harmless, the First Circuit followed the rule prescribed in *Neder,* and held that "[t]his is a finding that we cannot make in this case. The error cannot be harmless where, as here, the defendant has contested the omitted element and the evidence is sufficient to support a contrary finding." 270 F.3d. at 89, *citing Neder,* 527 U.S. at 19. The First Circuit did not sit as a second jury and weigh the evidence. Once it found sufficient evidence upon which a jury could have found in the defendant's favor on the contested issue, it remanded the case to the district court.

As discussed extensively in Mr. Green's Opening Mem. at 24-26, in *Barker v. Yukins,* 199 F.3d 867 (6th Cir. 1999), the Sixth Circuit granted a state prisoner relief under § 2254(d)(1) where the Michigan Supreme Court unreasonably applied the *Chapman* harmless error standard in circumstances very similar to those presented in the case at bar. In *Barker,* the Michigan Supreme Court found that trial court erred in refusing to instruct on self-defense where the defendant claimed that she believed she was about to be raped (a circumstance which permitted the use of deadly force under Michigan law), but found that the error was harmless because it found that no reasonable juror would have believed Barker's claim of self-defense. The Sixth Circuit rejected the Michigan Supreme Court's harmless error analysis, holding *inter alia* that a reasonable juror could well have believed that Barker had been resisting a rape, and that the

Michigan Supreme Court usurped the role of the jury in violation of Barker's due process and jury trial rights by engaging in a weighing of the competing evidence in which it "believed some evidence but discredited other evidence," *id.,* at 874, when "it [was] for the jurors to decide whether the amount of force was justifiable or unjustifiable" and whether the victim was enfeebled or capable of sexual assault. *Id.*, at 875.

Similarly, as demonstrated in Mr. Green's Opening Mem. at 26-31, it was for the jury and not the trial court or any appellate court to decide whether Mr. Green acted reasonably, and whether he was justified in using the level of force that he used to defend Michael Burton, by assessing and weighing the facts concerning (1) the gravity and imminency of the harmful threat to Burton, (2) whether Burton was in a more exposed position, (3) whether Burton could have retreated to safety, and (4) what level of force Burton would have been entitled to use to defend himself. The resolution of these factual issues was for the jury to decided, and the Appeals Court's erroneous application of the *Chapman* and *Neder* standards was unreasonable under § 2254(d).

### V.    Under Any Applicable Harmless Error Standard (*Chapman or Brecht*), the Constitutional Violations in this Case May Not Be Held Harmless, and Therefore, Mr. Green's Conviction Must be Vacated.

As noted in Mr. Green's Opening Mem. at 23-24, there is an open question whether, after the enactment of the AEDPA's more stringent review standards, a habeas court should apply the harmless error test established in *Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993) to the claims that were not adjudicated by the state courts (Claims 1 and 2, see pp. 3-4, *supra*) or to claims as to which the state court erred by failing to follow the standard established by the Supreme Court in *Neder.* (Claim 4, see pp. 4-6, *supra*). *See Sanna v. DiPaolo,* 265 F.3d 1, 14 n.6 (1st Cir. 2001) (citing cases). While in *Sanna*, the

First Circuit held that the *Brecht* harmless error standard applies on collateral review in post-AEDPA cases, Mr. Green submits that reasoning undergirding *Sanna* is should be reevaluated. In circumstances such as this, where (1) the state courts had the opportunity, but failed, to address the petitioner's substantive federal constitutional claims brought in state court, and thus never applied the *Chapman* standard to these asserted errors, and (2) purported to apply *Chapman* to another claim but erred in its application by not following *Neder*, Mr. Green was deprived of a standard of review that is part and parcel of his underlying substantive constitutional rights, is constitutionally required, and is binding on the states. S*ee Chapman,* 386 U.S. at 21-22; *California v. Roy,* 519 U.S. 2, 5 (1996). To apply the stricter *Brecht* standard in such circumstances would only serve to penalize a petitioner, such as Mr. Green, on federal habeas review merely because the state courts ignored and failed to adjudicate his underlying federal claims.

In *Orndorff v. Lockhart,* 998 F.2d 1426, 1430 (8th Cir. 1993), the Eighth Circuit held that "the *Brecht* rule is based largely on the notion that because the state courts can properly apply the *Chapman* harmless error standard on direct review, the federal habeas courts need only review those decisions under the *Kotteakos* [*Brecht*] harmless error standard," but that where a state court did not have an opportunity to review the error at all, and thus never applied the *Chapman* standard to the error, the appropriate standard for the federal court to apply in a habeas proceeding is the *Chapman* standard. *See also, Barrett v. Acevedo,* 169 F.3d 1155, 1164 (8th Cir.) (*en banc*), *cert. denied,* 528 U.S. 846 (1999) ("we use the strict standard set out in *Chapman v. California* . . . (harmless beyond a reasonable doubt) [rather than *Brecht*] in [habeas corpus] cases where the state court has not applied the *Chapman* standard in the first instance"). The benefit of the

*Orndorff* rule is that it avoids penalizing a defendant for claims that are not addressed by state courts, and it incentivizes state courts to fully address and adjudicate the federal constitutional claims, including adhering to the Supreme Court's precedents governing the application of the *Chapman* harmless error standard. It should be adopted here.

However, regardless of whether *Chapman* or *Brecht* applies to this Court's review of Mr. Green's claims, for the reasons expressed in Green's Opening Mem. at 26-32, the error here cannot he be held harmless even under the stricter *Brecht* standard. In *Barker v. Yukins, supra,* 199 F.3d at 867, the Eighth Circuit held that the failure to instruct on the use of deadly force in response to an imminent threat of rape was not harmless under *Brecht* even though the Michigan Supreme Court had concluded that the defendant's claim of self-defense to the attempted rape was of dubious credibility and not likely to have been accepted by any jury because: (1) there were no third-party witnesses to the underlying incident, and the account of what transpired came entirely from the defendant; (2) the alleged rapist was an 81-year old man, who was unsteady on his feet and needed a cane to get around, whereas, the defendant was a young woman in her early 20s who weighed 170 pounds; and, (3) the defendant inflicted 32 stab wounds and ten head blows to the victim, which suggested that the defendant may not have acted in self-defense at all.

In comparison to the *Barker* case, the evidence in support of Mr. Green's defense of another claim was much, much stronger. Mr. Green's evidence of defense of another did not come from his mouth, but from the testimony of Michael Burton and Mark Roberts, who described how Lamont Jones walk up the sidewalk and began shooting at Green and Burton. The unarmed Burton was in mortal danger, he was in a more exposed

position at the railing, and the Appeals Court held that the jury could have inferred that Jones was shooting at both Green and Burton.  *See* Appeals Court's description at 55 Mass. App. Ct. at 380.

Contrary to the Appeals Court's reasoning, it does not follow from the fact that the jury did not acquit Mr. Green based on self-defense that the jury would have rejected defense of another.  As explained in Green's Opening Mem. at 28-30, it would not have been inconsistent for the jury to have rejected a claim of self-defense and at the same time have accepted defense of another because the latter permits an individual to affirmatively intervene to come to the aid of a third party.  Had the jury been instructed on defense of another, it would have been required to assess the danger posed and the amount of force needed to respond to the danger in relation to Michael Burton's situation, and not in relation to Mr. Green's situation.  The jury never had this opportunity.  The Appeals Court's finding of harmless error -- after it expressly held that the evidence "was sufficient to support a reasonable belief on the part of a person in [Mr. Green's] position (1) that his intervention was necessary for the protection of Burton and, (2) that Burton would have been justified in using such force to protect himself[,]"  55 Mass. App. Ct. at 380, and that "it [was] the jury's function to assess the credibility of the evidence," *id.,* at 379, -- is incongruous.  Mr. Green's defense of another claim was critical to his defense, and the error had a substantial and injurious effect on the verdict.

## CONCLUSION

For all the foregoing reasons, this Court should grant habeas relief by vacating Mr. Green's conviction for manslaughter and ordering other such relief as may be appropriate.

DATED: January 10, 2005

> Respectfully submitted,
>
> /s/Philip G. Cormier_____
> Philip G. Cormier
> BBO#554515
>
> Good & Cormier
> 83 Atlantic Avenue
> Boston, MA 02110
> Tel. 617-523-5933
> Fax. 617-523-7554
>
> *Counsel for Willie Green*

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2005, I caused a copy of the above document to be served by e-mail and first class mail, postage pre-paid, to Assistant Attorney General Susanne Reardon, Office of the Attorney General, One Ashburton Place, Boston, MA 02108-1598.

> /s/Philip G. Cormier_____
> Philip G. Cormier

G:\Clients\Green\Federal Habeas\1-10-04 supp memo final.doc