UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIE GREEN )<br>　　　Petitioner, )<br>　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　)<br>CAROL MECI　　　　　　　)<br>　　　Respondent. )<br>　　　　　　　　　　　　　　) | Civil Action No. 04-10360-JLT |

**RESPONDENT'S MEMORANDUM IN OPPOSITION
TO PETITION FOR HABEAS CORPUS**

This memorandum of law is submitted in opposition to the petition for a writ of habeas corpus filed by Willie Green ("the petitioner"). As argued in this memorandum, the petition must be denied where the petitioner cannot demonstrate that the state court's adjudication of his claim as harmless error was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or that the trial court's error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

**PRIOR PROCEEDINGS**

On March 18, 1998, a Suffolk County grand jury indicted the petitioner on a charge of first-degree murder, illegal possession of a firearm and illegal possession of ammunition. (S.A. 1, p. 3).[1] From February 16 through February 23, 1999, the petitioner was tried before a jury, Bohn, J., presiding (S.A. 1, pp. 4-5). On February 23, 1999, the jury found

---

[1] The respondent's supplemental answer will be referred to as (S.A.--).

the petitioner guilty of the lesser included offense of voluntary manslaughter on the murder indictment and guilty as charged on the other two indictments (S.A.1, p. 5). Justice Bohn sentenced the petitioner to term of seven to ten years imprisonment on the manslaughter conviction, and to a concurrent term of four to five years on the firearm conviction (S.A. 1, p. 6). The ammunition conviction was placed on file with the petitioner's consent (S.A. 1, p. 6). The petitioner filed a timely notice of appeal (S.A. 1, p. 6).

On appeal the petitioner raised two issues: 1) that the trial court committed reversible error by refusing to instruct the jury on defense of another by violating his right to present a defense, and precluding the jury from determining whether he acted with lawful justification and relieving the Commonwealth of its burden of proving his guilt beyond a reasonable doubt; and 2) the trial court's supplemental instructions were fatally flawed in that a reasonable juror could have understood them to mean that self-defense was only a mitigating factor and not a complete defense (S.A. 2). The Massachusetts Appeals Court affirmed the defendant's convictions on December 14, 2001. *Commonwealth v. Green*, 55 Mass. App. Ct. 376, 770 N.E.2d 995 (2001) (S.A. 5). The petitioner's petition for rehearing was denied on April 11, 2003. In his application for further appellate review to the Supreme Judicial Court, the petitioner raised three claims: 1) the Appeals Court applied the incorrect standard in evaluating whether the trial court's refusal to instruct on defense of another was harmless; 2) the Appeals Court ignored a critical distinction between self defense and defense of another, and the trial court's error was not harmless under either the Chapman standard or the non-prejudicial error standard; 3) a reasonable juror could have understood the trial court's supplemental instructions to mean that self defense was only a mitigating factor rather than a complete defense which

2

required acquittal (S.A. 10). In a supplement to his application for further appellate review[2], the petitioner claimed that the failure to instruct on defense of another was constitutional error which cannot be deemed harmless beyond a reasonable doubt (S.A. 12). The SJC denied further appellate review on June 26, 2003. *Commonwealth v. Green*, 439 Mass. 1108, 791 N.E.2d 346 (2003) (S.A. 14).

On February 23, 2004, the petitioner filed a petition for writ of habeas corpus in this court. On June 18, 2004, the respondent filed an Answer and supplemental answer as well as a motion to dismiss for failure to exhaust state court remedies. On October 27, 2004, this court adopted Magistrate Alexander's report and recommendation and denied the motion to dismiss. The petitioner filed a supplemental memorandum of law in support of his petition on January 10, 2005.

## STATEMENT OF FACTS

The Massachusetts Supreme Judicial Court's recitation of the facts of the petitioner's crimes is entitled to the presumption of correctness under 28 U.S.C. §2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1sr Cir. 2000). The AEDPA presumption of correctness applies to all "basic, primary, or historical facts" underlying the state court's conclusion. *Gunter v. Maloney*, 291 F.3d at 76; *Sanna v. DiPaolo*, 265 F.3d at 7. In addition, the presumption of correctness extends to factual

---

[2] The petitioner's application for further appellate review was stayed pending a decision on his petition for rehearing in the Appeals Court. When the Appeals Court denied the petition for rehearing but revised its original opinion to change the standard of review used to analyze constitutional harmless error (S.A. 9), the SJC allowed the petitioner an opportunity to supplement his application (S.A. 11).

determinations made by both state trial and appellate courts. *Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002), and to any factual findings implicit in the state court's ruling. *LaVallee v. Delle Rose*, 410 U.S. 690, 692 (1972); *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir.), *cert. denied*, 531 U.S. 1003 (2000). As the First Circuit has noted, "[a] habeas petitioner must clear a high hurdle before a federal court will set aside any of the state's factual findings." *Mastracchio v. Vose*, 274 F.3 590, 598 (1st Cir. 2001). The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1).

The Supreme Judicial Court found the following facts concerning the petitioner's crimes:

> From the defendant's perspective, Jones was his enemy, and the two men had had several confrontations prior to the one that resulted in Jones's death.[3] There was evidence of a fistfight between the two, an incident in which the defendant had fired a gun at Jones during an argument, and another in which Jones had struck the defendant in the face with a portable cassette player and then chased him.
>
> On the afternoon of January 10, 1998, the defendant visited the apartment of a friend, one Michael Burton, located on the ground floor of 83 Hutchins Street in Boston. Although Burton had not heard any gunshots, the defendant told him that Jones had just fired a gun at him while he was in front of the apartment building.[4] The defendant spoke with Burton about his concern that his 'beef' with Jones was 'starting to heat up, starting to become serious.' He also told Burton that he thought that Jones was at Traci Coplin's home, which was located nearby at 79 Hutchins Street.

---

[3] Testimony at trial established that Jones was a large, muscular man about 6' 4" tall and weighing around 250 pounds. The defendant was apparently significantly smaller. Several witnesses testified that Jones had a reputation for violence, and it was well known in the neighborhood that he had served time in prison. (Footnote in opinion).

[4] Tiffany Brown, who lived across the street from 83 Hutchins Street, reported that she had heard gunshots outside of her home that afternoon. (Footnote in opinion).

The defendant spent the remainder of the afternoon at Burton's apartment. On one occasion Burton left the building and, when he returned, he observed the defendant and another man, whom he knew as 'Mike,' in the front entryway. Burton saw Mike hand the defendant a .38 caliber gun, which the defendant then stuck in his waistband.

Following his receipt of the gun, the defendant returned to Burton's apartment and positioned himself on a couch so that he could look out a window that faced Hutchins Street. At one point, the defendant called Burton to the window and indicated that Burton's friend, Mark Roberts, was outside. Burton and the defendant went downstairs to see Roberts. As Burton walked out the front door of his apartment building, Roberts was across the street walking his dog. Burton then noticed another man coming toward him from the left, on the same side of the street as 83 Hutchins Street. Burton turned toward the approaching man, realized that it was Jones, and exclaimed, 'Oh, shit, there he is.'[5] At that point, the defendant was standing behind Burton on the steps of the building. Burton had his right hand on the railing on the right side of the front steps and the defendant was behind him and to the left with his hand still on the handle of the open front door. Jones continued to approach Burton and the defendant, saying, 'What's up?' before pulling out a gun. Jones then opened fire, shooting at Burton and the defendant. The defendant, using the front door as shield, returned fire with his own weapon from behind the door.[6] The defendant continued to shoot as he backed away from the doorway, and Burton, now inside the building, tried to pull the defendant into the entryway from behind. After Burton and the defendant had both gotten into the entryway of 83 Hutchins Street, Jones turned, took about three steps, and then collapsed face down on the sidewalk. He was pronounced dead a short time later at a local hospital.[7]

During the trial, the defendant requested jury instructions on the theories of both self-defense and defense of another. The trial judge agreed to give the self-defense instructions but declined to instruct on defense of another. The defendant made a timely objection to the omission.

---

[5] Traci Coplin, a sometime girlfriend of Jones, testified at trial that Jones had been at her apartment for her daughter's birthday party and had left around 9:00 or 9:30 P.M., stating that he would be back in twenty minutes. She testified that she heard gunshots outside after he left. (Footnote in opinion).

[6] Jones fired eight or nine shots and the defendant fired between four and six. (Footnote in opinion).

[7] It was later determined that the defendant had suffered a gunshot wound to his right hip. (footnote in opinion).

...

*Commonwealth v. Green*, 55 Mass. App. Ct. 376, 377-379, 770 N.E.2d 995, 997-998 (2002) (S.A. 5).

## ARGUMENT

### Standard of Review

Habeas corpus review of claims previously adjudicated by state courts is both limited and highly deferential:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This "highly deferential standard for evaluating state-court rulings" reflects the overarching structure of the federal habeas corpus scheme, which vests "primary responsibility" for evaluating federal law claims raised in criminal trials in the state courts, courts which must be presumed in habeas corpus courts to know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24, 27 (2002) (per curiam). Thus, as the Supreme Court has repeatedly emphasized, it is not sufficient to warrant habeas corpus relief that the state court's decision was erroneous or incorrect. *Id*. at 27; *Williams v. Taylor*, 529 U.S. 362, 412 (2000). It is not even sufficient that the state court "failed to apply" Federal law clearly established by the Supreme Court, *Early v. Packer*, 537 U.S. 3, 10 (2002) (per

curiam), or that the state court committed "clear error," or that the reviewing court is of the "firm conviction" that the state court's ruling was erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

Rather, federal courts must decline to intervene to disturb state court judgments unless petitioner demonstrates that his claim falls into one of the narrowly drawn categories set forth in the statute. "Under § 2254(d)(1), the writ may only issue if one of . . . two conditions is satisfied . . . ." *Williams*, 529 U.S. at 412. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. *Id*. at 412-13. The analysis under the "unreasonable application" clause is distinct, and relief is available only if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. To be entitled to relief under the latter clause, the burden is on petitioner to show that the state court decision applied the clearly established law in an "objectively unreasonable" manner. *Id*. at 409-10. Since "[a]pplying a general standard to a specific case can demand a substantial element of judgment," "[t]he more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Yarborough v. Alvarado*, 124 S. Ct. 2140, 2149 (2004). The clearly established law that is relevant to the analysis under § 2254(d)(1) is limited to the holdings of United States Supreme Court cases extant at the time of the state court decision, and does not include the dicta of such cases. *Id*. at 2147; *Williams*, 529 U.S. at 412.

7

Factual determinations of state courts are granted similar deference. To satisfy § 2254(d)(2), a petitioner must show that the state's factual determination was objectively unreasonable. *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 399 (2000)). Objective unreasonableness is not merely an incorrect or erroneous decision. *Williams*, 529 U.S. at 410; *see also Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003) ("petitioner's challenge to a decision based on a factual determination will not succeed if the petitioner merely evidences that the state court committed error. Instead, he must further establish that the state court committed unreasonable error."); *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003) ("federal habeas court may not grant habeas relief under § 2254(d)(2) merely because it disagrees with a state trial court's factual determination").

Moreover, § 2254(d)(2) must be interpreted in conjunction with § 2254(e)(1), which specifies both that "a determination of a factual issue made by a State court shall be presumed to be correct," and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Sanna v. DiPaolo*, 265 F.3d 1, 7. *See also Miller-El,* 537 U.S. at 341 (noting that to prevail under § 2254(d)(2), habeas petitioner must both disprove the factual finding by clear and convincing evidence and demonstrate that the court's factual determination was objectively unreasonable).

I.  **THE APPEALS COURT'S DETERMINATION THAT THE FAILURE TO INSTRUCT THE JURY ON DEFENSE OF ANOTHER WAS HARMLESS ERROR WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF *CHAPMAN v. CALIFORNIA* AND DID NOT CONSTITUTE ERROR UNDER *BRECHT v. ABRAHAMSON.***

The petitioner claims that the judge's failure to instruct the jury on defense of another violated his due process right to present a defense, his due process rights and Sixth Amendment jury trial right to have the jury determine his guilt and violated his due process rights by relieving the Commonwealth of the burden of having to prove his guilt beyond a reasonable doubt. He also claims that the Appeals Court's determination that the failure to instruct constituted harmless error was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court and that the error cannot be found to be harmless under *Chapman v. California*, 386 U.S. 18 (1967) or *Brecht v. Abrahamson*, 507 U.S. 619 (1993). These claims must fail.

In analyzing whether the trial judge should have instructed the jury on defense of another, the Appeals Court acknowledged that when self defense or defense of another is sufficiently raised by the evidence, the defendant is entitled to an instruction that the Commonwealth has the burden of disproving the defense beyond a reasonable doubt. *Green*, 55 Mass. App. Ct. at 379, 770 N.E.2d 995 (S.A. 5). The court cited to *Commonwealth v. Rodriguez*, 370 Mass. 684, 687-688 (1976), in which the SJC held that when self defense or defense of another is sufficiently raised by the evidence, the Due Process Clause requires that the Commonwealth disprove these defenses beyond a reasonable doubt. In determining that the defendant was entitled to an instruction on defense of another, the court implicitly held that the judge's failure to give such an

instruction violated the defendant's due process rights.  The court did not specifically analyze the merits of the other constitutional claims raised by the petitioner but added the following footnote:

> Even considering the trial judge's failure to instruct on defense of another to be error of constitutional dimension, in these circumstances we determine that the Commonwealth proved that the error was harmless beyond a reasonable doubt and 'did not contribute to the verdict obtained.' *Chapman v. California*, 386 U.S. 18, 24 (1967). *See Commonwealth v. Vinnie*, 428 Mass. 161, 163, 698 N.E.2d 896 (1998).

*Commonwealth v. Green*, 55 Mass. App. Ct. at 381 n.7, 770 N.E.2d 995.  This footnote implicitly acknowledged the fact that the petitioner made other constitutional claims with regard to the absence of an instruction on defense of another and found that, even assuming that such error did exist, it was harmless in the context of the case.

The petitioner now asserts that the two claims of constitutional error which the court did not reach should be reviewed *de novo* by this court. (Supp. Pet. pp. 3-4).  *See Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001) (AEDPA applies only when the state court decided the federal issue).  This court need not reach the issue of what standard should apply to the analysis of the underlying claims since the Appeals Court agreed that the failure to instruct was error, but found it to be harmless in the context of the case.  *See Commonwealth v. Green*, 55 Mass. App. Ct. at 381, 770 N.E.2d 995 (S.A. 5).  *See also White v. Coplan*, slip op. No. 04-1044, p. 10 (1st Cir., February 18, 2005) ("we infer that the federal claim was considered if the state court rejects a counterpart state claim and then cites to a case holding that the federal constitution provides no greater protection").  The only issue to be analyzed on habeas review is whether the Appeals Court's harmless error analysis was proper under the habeas standard of review and whether the error had

a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The Appeals Court cited to *Chapman v. California*, 386 U.S. 18 (1967) in its footnote in which it held that even if the error was of constitutional dimension, it "did not contribute to the verdict obtained" and therefore was harmless beyond a reasonable doubt. *Commonwealth v. Green*, 55 Mass. App. Ct. at 381 n.7, 770 N.E.2d 995. This is the correct standard of review for constitutional error on direct review. The petitioner contends that the Appeals Court's *Chapman* analysis was incorrect because it was contrary to and an unreasonable application of the Supreme Court's decision in *Neder v. United States*, 527 U.S. 1 (1999). (Pet. Supp. Memo pp. 12-17). In *Neder*, the trial judge improperly refused to instruct the jury on the element of materiality where the petitioner was charged with tax fraud. *Id*. at 4. The Court held that such an error may be analyzed under the harmless error standard of *Chapman v. California*, 386 U.S. 18 (1967) and that because the issue of materiality was uncontested, the failure to instruct the jury on that element was harmless. *Id*. at 19-20. The petitioner claims that under this reasoning, the failure to instruct on defense of another in this case cannot constitute harmless error because the issue was contested and the Appeals Court found that the evidence in the light most favorable to the petitioner supported such an instruction. This claim must fail where the Appeals Court's application of the harmless error standard was not "objectively unreasonable." *See Mitchell v. Esparza*, 540 U.S. 12, 18 (2003) ("We may not grant respondent's habeas petition. . . if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the [state court]

11

applied harmless-error review in an "objectively unreasonable" manner).

In this case the Appeals Court's conclusion that the error was harmless was reasonable in the context of the case. The court concluded that "[t]he actions which the defendant undertook, arguably in his own defense, are the same actions that support his contention that he was acting in defense of another. As the jury failed to view the defendant's actions as justifiable for his own defense, there is no basis to conclude that the jury would have considered those same actions justified when undertaken for the defense of another in the same circumstances." *Commonwealth v. Green*, 55 Mass. App. Ct. at 381, 770 N.E.2d at 999-1000.   This conclusion is borne out by the trial testimony of Mark Roberts, who testified that he saw the petitioner and Burton emerge from the doorway of the building simultaneously (Tr. II/125) and then when the shooting began, he saw Burton trying to pull the petitioner back inside the doorway (Tr. II/129). It was only after Burton pulled the petitioner back inside the doorway that the petitioner began shooting back (Tr. II/129-131). The petitioner's sister, Vivian Green, who was also on the street outside the building at the time of the shooting, corroborated the fact that Burton was trying to pull the petitioner inside as the victim was shooting at them (Tr. IV/101-104).[8]

The court's conclusion of harmless error is further supported by the evidence of the petitioner's actions in arming himself with a gun earlier in the day (Tr. II/74) after he told his friend Michael Burton that the victim had fired a gun at him (Tr. II/71-72) and telling another witness that he was looking out the window for the victim because "I got a beef and I got

---

[8] Burton himself testified that when the shooting began, he put his arms over his face and heard shots coming from in front of him and beside him (Tr. II/94). When the shooting stopped, he ran back inside the building, but did not see the petitioner there (Tr. II/95-96).

12

to handle my business" (Tr. II/154). These facts tended to show that the petitioner was unlikely to back off from a future confrontation with the victim and supported the jury's decision that the petitioner acted either with excessive force in self-defense, or as a result of provocation or sudden combat.

Therefore, the trial judge had instructed the jury on the strongest defense where the evidence showed that the victim and the petitioner were enemies and had been in physical confrontations before. It was clear that the petitioner was the intended target, yet the jury did not find that the petitioner was completely justified in shooting at the victim, returning a verdict of voluntary manslaughter. It was reasonable for the Appeals Court to conclude that a further instruction on a similar defense that the petitioner may have been defending Burton when he shot at the victim would also have been unsuccessful.

The facts of this case differ from those in *Neder* where the trial judge actively refused to instruct on an actual element of the offense charged. In this case the trial judge refused to instruct on a further defense based on similar circumstances that the jury eventually rejected as a complete defense. Therefore, this court cannot conclude that the Appeals Court's decision was an unreasonable application of the *Chapman* harmless error standard. Unlike the lower court in *Barker v. Yukins*, 199 F.3d 867 (6th Cir. 1999),[9] to which the petitioner cites, the Appeals Court in this case did not make its own determination about the credibility of the testimony in coming to its conclusion that the error

---

[9] In *Barker,* the Sixth Circuit reversed the Michigan Supreme Court's finding that the failure to instruct the jury that the petitioner was entitled to use deadly force to prevent a rape was harmless error where the record did not indicate whether the jury rejected the standard self defense instruction because it believed that the victim's attack would not lead to death or great bodily injury. *Id*. at 873-874.

was harmless. Instead the Appeals Court relied on the fact that the jury had failed to acquit the petitioner based on self defense and therefore "there was no basis to conclude that the jury would have those same actions justified when undertaken for the defense of another in the same circumstances." *Green*, 55 Mass. App. Ct. at 381, 770 N.E.2d at 1000.

Even if this court finds that the Appeals Court's harmless error analysis was contrary to or an unreasonable application of *Chapman* and *Neder*, the Supreme Court has held that a less onerous standard of review should be applied to claims of constitutional error raised on habeas review. Under this standard, the petitioner is not entitled to habeas relief for the constitutional error unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Although the *Brecht* standard is more lenient toward the government than the beyond a reasonable doubt standard of *Chapman v. California*, 386 U. S. 18 (1967), it is the respondent's burden to establish harmlessness under *Brecht*. *O'Neal v. McAninch*, 513 U. S. 432, 437-444 (1995). As discussed above, where the jury rejected self defense as a complete defense, it is highly unlikely that they would have acquitted the petitioner based on defense of another. Thus, the failure to instruct on defense of another in this case did not have such a substantial and injurious effect on the verdict.

## **CONCLUSION**

For the reasons detailed herein, the state court's resolution of the petitioner's federal constitutional claims was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. While this Court may disagree with the harmless error analysis of the petitioner's claim, it is not free under the constraints imposed by the AEDPA to substitute its own judgment for the reasonable judgment of the state court. *Williams v. Matesanz*, 230 F.3d at 429. As the First Circuit recently explained:

> When there are two plausible outcomes that can result for a reasoned application of clearly established Supreme Court precedent to a particular set of facts, the state court's choice between those two outcomes, whether right or wrong, cannot constitute a basis for habeas relief under [the AEDPA].

*Id.* The Petition for a Writ of Habeas Corpus should accordingly be denied.

                                      Respectfully submitted,

                                      THOMAS F. REILLY
                                      ATTORNEY GENERAL

                                      /s/ Susanne G. Reardon
                                      Susanne G. Reardon
                                      Assistant Attorney General
                                      Criminal Bureau
                                      One Ashburton Place
                                      Boston, Massachusetts 02108
                                      (617) 727-2200 ext. 2832
                                      BBO No. 561669

Dated: February 18, 2005

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served upon the petitioner's counsel, at the address below on February 18, 2005, by depositing the copy in the office depository for collection and delivery by first-class mail, postage pre-paid, to him as follows:

Philip Cormier, Esq.
Good & Cormier
83 Atlantic Avenue
Boston, MA 02110

                                    /s/ Susanne G. Reardon
                                    Susanne G. Reardon
                                    Assistant Attorney General