## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____
                               )

**WILLIE GREEN,**                  )

           **Petitioner,**     )   **Civil Action No. 04-10360-JLT**

                               )

       **v.**                   )

                               )

**CAROL MECI,**              )

                               )

           **Respondent.**    )
_____)

### PETITIONER WILLIE GREEN'S REPLY
### TO RESPONDENT'S MEMORANDUM IN
### <u>OPPOSITION TO PETITION FOR HABEAS CORPUS</u>

Petitioner Willie Green submits this memorandum in reply to Respondent's

Memorandum in Opposition to Petition for Habeas Corpus ("Resp. Opposition"). As

demonstrated below, Respondent's analysis of the harmless error issue raised in this case

has ignored and misapplied the principle that was clearly established by the Supreme

Court in *Neder v. United States,* 527 U.S. 1 (1999), which holds an appellate court may

not apply the harmless error standard established by *Chapman v. California,* 386 U.S. 18

(1967), in circumstances where a trial court has failed to instruct the jury on an element

of the offense and there was evidence presented at trial contesting the disputed element.

In the case at bar, the trial court's erroneous refusal to instruct on defense of another

violated Mr. Green's federal constitutional rights by, among other things, relieving the

Commonwealth of its constitutional obligation to prove every element of the offense

beyond a reasonable doubt, *i.e,* that Mr. Green's actions in his defense of Michael Burton

were not justified.

Instead of adhering to *Neder's* clearly established rule that the resolution of

conflicting facts that bear on whether the prosecution has proved an element of the

offense beyond a reasonable doubt is solely within the province of the jury, the Appeals

Court in this case engaged in a forbidden weighing of the evidence and found that the

error was harmless even though it had already concluded that there was sufficient

evidence from which a jury could have found that Mr. Green acted in defense of another.

The Appeals Court's application of the *Chapman* harmless error standard in this case was

contrary to, and involved an unreasonable application of, clearly established federal law

as prescribed by *Neder*, and the error had a "substantial and injurious effect or influence

in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).

Mr. Green is entitled to habeas relief.

I.    **THE APPEALS COURT'S DECISION WAS CONTRARY TO, AND AN
      UNREASONABLE APPLICATION OF, THE SUPREME COURT'S
      DECISION IN *NEDER V. UNITED STATES,* WHICH CLEARLY
      ESTABLISHED THAT AN APPELLATE COURT MAY NOT FIND THAT
      THE FAILURE TO INSTRUCT A JURY ON AN ELEMENT OF THE
      OFFENSE IS HARMLESS WHERE THE ELEMENT WAS CONTESTED
      AT TRIAL AND CONTRARY EVIDENCE WAS PRESENTED AT TRIAL.**

Respondent does not dispute that the harmless error rule prescribed by *Chapman*

*v. California,* 386 U.S. 18 (1967) and *Neder v. United States,* 527 U.S. 1 (1999), is

clearly established federal law that is binding on the states.  *See* Green's Supp. Mem. at

13-15.  However, Respondent argues that this Court should find that the Appeals Court's

ruling was not contrary to, or an unreasonable application of, clearly established federal

law.  Resp. Opposition at 13-14.  This argument fails.  A state court decision is "contrary

to" federal law "if the state court either applies a legal rule that contradicts an established

Supreme Court precedent or reaches a different result on facts materially

indistinguishable from those of a controlling Supreme Court precedent." *Ouber v. Guarino,* 293 F.3d 19, 26 (1st Cir. 2003). Under the "unreasonable application" prong of § 2254(d)(1), habeas relief may be granted when the state court identifies the correct legal principle, but unreasonably applies that principle to the facts of the prisoner's case." *Id.* This latter prong "also encompasses situations in which the state court either unreasonably extends a legal principle derived from Supreme Court precedent to an inappropriate context or unreasonably refuses to extend that principle to an appropriate context." *Id.* Here, the Appeals Court's decision was contrary to, and an unreasonable application, of established Supreme Court precedent (the *Neder* decision).

Both Respondent and the Appeals Court have ignored the very clear rule established by the Supreme Court in *Neder v. United States*, *supra,* 527 U.S. at 1, in which the Court addressed the question of whether the erroneous refusal to instruct the jury on an element of a criminal offense was a structural defect that required automatic reversal, or whether, the *Chapman* harmless error standard could be applied to such instructional error. *Id.,* at 7-13. The Court in *Neder* held that the *Chapman* standard could be applied without undermining the jury trial guarantee "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence," *id.* at 17, but that "where the defendant contested the omitted evidence and raised evidence sufficient to support a contrary finding – [the appellate court] should not find the error harmless." *Id.,* at 19.

The *Neder* decision is not ambiguous. Nor is the rule complex in its application. *Neder* clearly instructs that once an appellate court determines that an omitted element of the offense was contested and that there was sufficient evidence to support a contrary

3

finding, its harmless error inquiry ends, and it may not find the error harmless because

under the federal constitution a defendant unquestionably has the right to have the jury,

and not the courts, decide whether the government has proved each and every element of

the offense beyond a reasonable doubt.  The First Circuit, in adherence to *Neder's*

clearly established rule, has refused to find harmless error where the defendant contested

the omitted element and the evidence was sufficient to support a finding contrary to that

urged by the government.  For example, in *United States v. Bailey,* 270 F.3d 83, 88-90

(1st Cir. 2001), the Court rejected the government's claim that the trial court's failure to

submit the factual question of the weight of the drugs to the jury could be found

harmless, stating that under *Neder* "[t]his is a finding <u>we cannot make</u> in this case.  The

error <u>cannot be harmless</u>, where, as here, the defendant has contested the omitted

element and the evidence is sufficient to support a contrary finding."  *Id.,* at 89

(emphasis supplied), *citing, Neder,* 527 U.S. at 19.  Similarly, in *United States v.*

*Teemer,* 394 F.3d 59, 63 (1st Cir. 2005), the Court recently held that, had the defendant

been entitled to an instruction that his transitory touching of a weapon to move it out of

the way was a defense to a charge of being a felon in possession of a firearm, the Court

would not have been able to accept the government's contention that the error was

harmless, because under *Neder,* it would have been for the jury, and not the Court, to

decide whether the defendant had intended to exercise possession of the firearm.

Here, the Appeals Court ignored *Neder* entirely, and failed to apply it to the

underlying error.  In its revised decision that was issued after Mr. Green requested

rehearing, the Appeals Court referenced only the *Chapman* standard in a footnote and

then weighed the evidence to conclude that the error was harmless.  *See* Green's Record

4

Apppendix at R.1136.[1]  As a result of its failure to adhere to the limitation imposed by

*Neder,* the Appeals Court applied a legal rule that contradicted established Supreme

Court precedent.[2]  *See e.g., Williams v. Taylor,* 529 U.S. 362, 391-399 (2000) (for

purposes of 28 U.S.C. § 2254(d)(1), Virginia Supreme Court's misconstruction of the

federal ineffective assistance of counsel standard, via its holding that *Lockhart v.*

*Fretwell,* 506 U.S. 364 (1993) had modified or overridden the standard established by

*Strickland v. Washington,* 466 U.S. 668 (1984), constituted a decision that was "contrary

to" *Strickland's* clearly established rule of federal law).

Alternatively, and in addition to being "contrary to" clearly established federal

law, the Appeals Court's decision constituted an objectively unreasonable application of

clearly established federal law under § 2254(d)(1).  Assuming that the Appeals Court

identified the correct legal principle from *Neder,* it unreasonably applied that principle to

the facts of Mr. Green's case by holding that the error was harmless after it had already

found sufficient facts from which the jury could have concluded that Mr. Green's actions

were justifiable in his defense of Michael Burton.  In this case, as in *Neder,* there was an

element of the prosecution's case that was omitted from the jury's consideration.[3]  In

---

[1]  In Mr. Green's petition for rehearing, he argued to the Appeals Court that the refusal to instruct on defense of another was federal constitutional error and that *Neder* precluded a finding of harmless error.  R.1006-1015.  The same arguments were made to the Supreme Judicial Court.

[2]  This alone is sufficient for Mr. Green to satisfy the "contrary to" requirement of 28 U.S.C. § 2254(d)(1), but as demonstrated *infra*, he also satisfies the "unreasonable application" prong of § 2254(d)(1).

[3]  The Commonwealth's obligation to prove beyond a reasonable doubt that Mr. Green had not acted in defense of another, *i.e,* without lawful justification, became an element of its case, *See Commonwealth v. Colantonio,* 31 Mass. App. Ct. 299, 307 (1991) (describing Commonwealth's burden), *citing Commonwealth v. Martin,* 369 Mass. 640, 650 (1976), and if the jury determined that the Commonwealth failed in this regard, Mr.

*Neder,* the element at issue had not been contested and no contrary evidence was

presented, which permitted the harmless error finding, but here, the element of

justification was contested and there was contrary evidence, which precluded a finding of

harmless error.  Here, the Appeals Court held that

> the jury could have inferred from the evidence that the unarmed Burton
> was in a more exposed position than the defendant when the shooting
> began and that Jones was shooting in the direction of both the defendant
> and Burton.  Moreover, even if Burton was not the intended target, he was
> certainly in imminent danger by virtue of his proximity to the defendant
> and position on the steps within range of Jones's weapon.  The evidence in
> the light most favorable to the defendant was sufficient to support a
> reasonable belief on the part of a person in the defendant's position (1)
> that his intervention was necessary for the protection of Burton, and (2)
> that Burton would have been justified in using such force to protect
> himself. An instruction on defense of another should have been given.

55 Mass. App. Ct. at 376 (internal case citations omitted).   In connection with the

omitted instruction, the Appeals Court also stated that "it [was] the jury's function to

assess the credibility of the evidence in light of correct principles of law as delivered to

them by the trial judge . . .," 55 Mass. App. Ct. at 379, but in the course of finding that

the jury would not have concluded that Mr. Green had acted justifiably in Burton's

defense, it weighed the evidence, stating that "the defendant and Burton were standing

close to each other when the shooting occurred.  The actions which the defendant

undertook, arguably in his own defense, are the same actions that support his contention

that he was acting in defense of another."  55 Mass. App. Ct. at 381.   Per *Neder,* it was

for the jury, and not the Appeals Court, to (1) make an independent determination as to

the credibility of the evidence, (2) to determine Burton's proximity to Mr. Green, (3) to

---

Green was entitled to an acquittal. *Commonwealth v. Johnson,* 412 Mass. 368, 371-372
(1992) ("defendant who is justified in using deadly force for the protection of a third
person is relieved of all criminal liability").

evaluate the danger posed to Burton and the level of force needed to defend him, and (4) ultimately, to decide whether or not the Commonwealth had proved beyond a reasonable doubt that Mr. Green had not acted justifiably in Burton's defense.  In the circumstances of this case, the Appeals Court's failure to adhere to *Neder's* limitation on its *Chapman* harmless error analysis was objectively unreasonable, and violated Mr. Green's federal constitutional rights to have the jury decide his guilt.

Respondent fails in her attempt to suggest that *Neder* is somehow materially distinguishable from the case at bar such that the Appeals Court was free to ignore *Neder* and was permitted to conclude, based on its assessment of the evidence, that the jury would have rejected defense of another for the same reasons that it rejected self defense. Resp. Opposition at 13.  That the jury did not conclude that Mr. Green had acted in self-defense does not remove this case from *Neder's* reach.  Defense of another was clearly an issue that was for the jury, and not the court, to decide.  *See also Barker v. Yukins,* 199 F.3d 867 (6th Cir. 1999) (Michigan Supreme Court held to have unreasonably applied *Chapman* harmless error standard where it held that there was sufficient evidence from which jury could have found that defendant acted in self-defense but then conducted its own weighing of the evidence in violation of the defendant's jury trial right to find the error harmless).

The Appeals Court's determination that the jury would have rejected defense of another because it concluded that Mr. Green had not acted justifiably in self defense was also objectively unreasonable insofar as the Appeals Court viewed self defense and defense of another to be entirely congruent in their elements as if the jury would have been required to conduct the same exact evidentiary analysis as to each defense.

Defense of another is clearly <u>not</u> congruent with self defense.  Self defense is permitted

only after a person has first availed himself of all proper means to avoid physical combat.

*Commonwealth v. DiCaro,* 359 Mass. 388, 390 (1971).  However, unlike self-defense,

defense of another contemplates affirmative intervention to protect a third person, and

"necessarily is irreconcilable with retreat."  *Commonwealth v. Sullivan,* 17 Mass. App.

Ct. 981, 982 (1984).  Further, self defense is analyzed from the perspective of the person

who is defending himself in terms of (1) the immediacy of the danger presented to him,

(2) whether he could have retreated, and (3) if not, whether the amount of force he used

to respond to the attack was reasonable under the circumstances.  *Commonwealth v.*

*Harrington,* 379 Mass. 446, 450 (1980).  Whereas, defense of another is evaluated from

the perspective of the danger posed to the <u>third person</u> and the amount of force that <u>third</u>

<u>person</u> would be justified in using to defend himself.  As noted by the Appeals Court in

this case, there was evidence sufficient to support a reasonable belief on the part of Mr.

Green that his intervention was "(1) necessary for the protection of Burton, and (2) that

Burton would have been justified in using such force to protect himself." 55 Mass. App.

Ct. at 380.

Hence, the jury's analysis of defense of another would not have been the same as

its analysis of self defense.  As explained in Green's Opening Mem. at 28-30, it would

not have been inconsistent for the jury to have found that Mr. Green was not entitled to

an acquittal based on self defense because it believed that he could have retreated to

safety inside the building, or because it viewed the force he used to defend himself as

excessive, but on the very same facts (indeed "same actions" on the part of Mr. Green)

found that Mr. Green was justified in standing his ground and that the amount of force he

used was reasonable under the circumstances to defend his unarmed friend who was standing further from the doorway at the top of the railing to the front steps.

Respondent also contends that this Court should conclude that the Appeals Court's harmless error analysis was reasonable based on certain isolated pieces of trial testimony, which Respondent claims support the Appeals Court's conclusion. Resp. Opposition at 12-13. This argument should be rejected for the following reasons.

First, as argued above, *Neder* does not permit an appellate court to engage in such a weighing of the evidence.

Second, even if the Appeals Court was permitted to weigh the evidence, Respondent ignores that under a traditional *Chapman* harmless error analysis, the appellate court may not view the evidence in the light most favorable to the prosecution, but rather, it must look to the evidence as a whole. *See United States v. Prigmore,* 243 F.3d 1, 2 (1st Cir. 2001). Respondent's reliance on a few isolated pieces of evidence does not make the Appeals Court's harmless error finding reasonable. Respondent contends that Mark Roberts' trial testimony shows that "it was only after Burton pulled the petitioner back inside the doorway that petitioner began shooting back." Resp. Opposition at 12. This skewed and one-sided description of the evidence does not square with other trial testimony or the Court of Appeals' findings.[4] Mr. Green's sister, Vivian Green, testified that when she saw her brother in the doorway being shot at by Lamont Jones ("Wise"), Michael Burton was in front of her brother at first, and then she saw Burton get behind her brother, pulling him inside as he was shooting. (R.559/Tr.IV:103-

---

[4]  As noted by Respondent there is a presumption of correctness as to factual determinations made by the State courts. This rule of analysis applies as well to factual determinations made by the state courts that are not in Respondent's favor.

104). Michael Burton testified that he was standing with his hand on the railing to walk down the steps, (R.230/Tr.II:114; Exs. 3, 4 & 15B), when out of the corner of his eye, he saw someone to his left on the sidewalk, and he realized it was Jones. (R.208-209, 230/Tr.II:92-93, 114). Burton had not seen Jones on the sidewalk until he stepped out the door, with Green behind him. (R.229/Tr.II:113). As Jones reached the base of the steps, only several feet from where Burton was standing at the top, Jones said, "What's up," and pulled out a gun. (R.209/Tr.II:93). Burton froze, put his arms up to his face, and then heard shots. (R.210, 231/Tr.II:94, 115). He heard approximately four to six shots, which came from beside him and in front of him, and he ran into the building when the shots stopped. (R.211-212/Tr.II:95-96). The Appeals Court's factual findings track this testimony, 55 Mass. App. Ct. at 378, and one cannot ignore the Court's finding that there was evidence from which the jury could have inferred that the unarmed Burton was in a more exposed position, that Jones was shooting in the direction of both Burton and Mr. Green, and that he was in imminent danger of serious bodily injury or death. 55 Mass. App. Ct. at 380. In these circumstances, the Appeals Court's harmless error analysis and its conclusion that the jury's consideration of defense of another would have required the same result were objectively unreasonable.

## II.     THE ERROR HAD A SUBSTANTIAL AND INJURIOUS EFFECT OR INFLUENCE IN DETERMINING THE JURY'S VERDICT.

Respondent has not met its burden to establish that the Appeals Court's error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). Even if this Court feels itself in "virtual equipoise as to the harmlessness of the error," it "should treat the error, not as if it were harmless, but as if it affected the verdict (i.e., as if it had a 'substantial and

injurious effect or influence in determining the jury's verdict).'"  *O'Neal v. McAnnich,*

513 U.S. 432, 436 (1995).  *See also, Barker v. Yukins,* 199 F.3d 867, 874 (6th Cir. 1999)

(finding refusal to instruct on special form of self-defense was "sufficient to raise grave

doubt" as to whether the general self defense instruction "created a substantial and

injurious influence on the verdict.").

       This is a case in which defense of another was central to Mr. Green's defense.

While Respondent argues that the jury's rejection of self defense makes it highly unlikely

that the jury would have acquitted Mr. Green based on defense of another, there is

absolutely no way of knowing on what basis the jury rejected self defense.  There is,

however, no question that there was sufficient evidence from which the jury could have

found that his defense of Michael Burton was justifiable, and as demonstrated above, it

would not have been inconsistent in this situation for the jury to have rejected self

defense, but at the same time, acquitted Mr. Green based on his defense of Michael

Burton.  In these circumstances, one cannot say "with fair assurance, after pondering all

that happened without stripping the erroneous action from the whole, that the judgment

was not substantially swayed by the error." *Singleton v. United States,* 26 F.3d 233, 237

(1st Cir. 1994).   The circumstances are more than sufficient to raise grave doubt as to

whether the error created a substantial and injurious effect on the verdict.

For all of the foregoing reasons, Mr. Green's petition for habeas corpus should be granted.

DATED:  March 11, 2005

Respectfully submitted,

/s/Philip G. Cormier_____
Philip G. Cormier
BBO#554515

Good & Cormier
83 Atlantic Avenue
Boston, MA 02110
Tel. 617-523-5933
Fax. 617-523-7554

*Counsel for Willie Green*

CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2005, I caused a copy of the above document to be served by e-mail and first class mail, postage pre-paid, to Assistant Attorney General Susanne Reardon, Office of the Attorney General, One Ashburton Place, Boston, MA 02108-1598.

/s/Philip G. Cormier_____
Philip G. Cormier

G:\CLIENTS\Green\Federal Habeas\Reply Memorandum FINAL.doc