UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2004-CV10360-JLT

WILLIE GREEN,
Petitioner

V.

CAROL MECI
Respondent

**REPORT AND RECOMMENDATION ON**

**THE PETITION FOR A WRIT OF HABEAS CORPUS
(DOCKET # 1)**

ALEXANDER, M.J.

On February 23, 1999, a Suffolk County Superior Court jury found the petitioner, Willie Green, guilty of voluntary manslaughter, illegal possession of a firearm and illegal possession of ammunition. Mr. Green was sentenced to a term of seven to ten years on the manslaughter conviction and to a concurrent term of four to five years on the firearm conviction. The Massachusetts Appeals Court affirmed the conviction and the Massachusetts Supreme Judicial Court ("SJC") denied his petition for further appellate review.

Mr. Green thereafter filed his petition for a writ of habeas corpus, on February 23, 2004. The District Court (Tauro, J.) referred the matter to this Court for a Report and Recommendation on April 2, 2004, and on June 18, 2004, the respondent filed a motion to dismiss on the basis that Mr. Green failed to exhaust his state-court remedies prior to filing his habeas petition. On August 19, 2004, this Court issued a Report and Recommendation that the motion to dismiss be denied, which the District Court adopted, over objection by the respondent, on October 27, 2004. Mr. Green thereafter filed a supplemental memorandum in support of his petition and the respondent filed her opposition. The Court held a hearing on the petition and, after consideration of the parties' asseverations, both written and oral, and for the reasons set forth more fully below, the Court RECOMMENDS that the petition for a writ of habeas corpus be DENIED.

**Relevant Factual Background**

The facts of this case are set forth in sufficient detail in the opinion of the Massachusetts Appeals Court. See Commonwealth v. Green, 55 Mass. App. Ct. 376, 770 N.E.2d 995 (2002). It suffices to recount the facts as the Appeals Court found them and as they appear in the record before this Court. Those renditions are presumed to be correct for the purpose of this petition. 28 U.S.C. § 2254(e)(1); Sanna v. DiPaolo, 265 F.3d 1, 7 (1st Cir. 2001).

On the afternoon of January 10, 1998, Mr. Green visited the apartment of a friend, Michael Burton, located on the third floor of 83 Hutchins Street in Boston. He told Mr. Burton that Lamont Jones had just fired a gun at him in front of the building. Mr. Green spent the rest of the afternoon going between Mr. Burton's apartment and a relative's apartment on the first floor. During that time, Mr. Green spoke with Mr. Burton about his concern that his "beef" with Mr. Jones was "starting to heat up, starting to become serious." He also told Mr. Burton that he thought that Mr. Jones was at the home of Traci Coplin, a nearby residence also located on Hutchins Street.

On one occasion during the afternoon, Mr. Burton left the building. When he returned, he observed Mr. Green and another man, whom Mr. Burton knew as "Mike," in the front entryway. Mr. Burton saw Mike hand Mr. Green a .38 caliber firearm, which Mr. Green then stuck in his waistband. Mr. Green returned to Mr. Burton's apartment and positioned himself on the couch so that he could look out a window that faced Hutchins Street. At one point, Mr. Green called Mr. Burton to the window and indicated that Mr. Burton's friend, Mark Roberts, was outside. Mr. Burton and Mr. Green went downstairs to see Mr. Roberts.

As Mr. Burton walked out the front door of the apartment, Mr. Roberts was across the street walking his dog. Mr. Burton then noticed another man coming

toward him from the left, on the same side of the street as Mr. Burton's residence. Mr. Burton turned toward the approaching man, realized that it was Mr. Jones, and exclaimed, "Oh shit, there he is." At that point, Mr. Green was standing behind Mr. Burton on the steps of the building. More specifically, it appears that Mr. Burton had his right hand on the railing on the right side of the front steps and that Mr. Green was behind Mr. Burton and to the left, with his hand on the knob of the open front door. Mr. Jones continued to approach petitioner, saying "What's up?" before pulling out a gun. Mr. Jones then opened fire, shooting at Mr. Burton and Mr. Green.

   Mr. Green, using the front door as a shield, returned fired with his own weapon from behind the door. Mr. Green continued to shoot as he backed away from the doorway, and Mr. Burton, now inside the building, tried to pull the defendant into the entryway from behind. After Mr. Burton and Mr. Green returned into the entryway of the residence, Mr. Jones turned, took three steps, and then collapsed face down on the sidewalk. He was pronounced dead a short time later at a local hospital. Mr. Green was subsequently arrested and charged with the murder of Mr. Jones.

**Procedural History**

At trial, Mr. Green requested jury instructions on the theories of both self-defense and defense of another. The trial judge agreed to give the self-defense instruction but declined to instruct on defense of another. The jury returned a verdict of voluntary manslaughter.

Based on the foregoing, Mr. Green asserted in his state court appeal that the trial court committed reversible error by refusing to instruct the jury on defense of another and that this error violated his state and federal constitutional rights in three separate ways: (1) he was deprived of his due process rights to have the jury consider a credible defense; (2) he was deprived of the due process requirement that the Commonwealth prove him guilty beyond a reasonable doubt; and (3) he was deprived of his due process and jury trial rights to have the jury, and not the trial court or the Massachusetts courts, decide his guilt.[1] Mr. Green further asserted that because he was deprived of a substantial defense, the error should be considered a "structural defect" in the trial mechanism that was *per se* prejudicial and required automatic reversal, but even if the error was not a structural defect, reversal was required under the harmless error standard established by Chapman v.

---

[1]Mr. Green also raised in his state court appeal another claim of error relating to supplemental jury instructions concerning the definition of "malice" and "voluntary manslaughter mitigating factors." This claim is not at issue here.

California, 386 U.S. 18, 24 (1967), and its progeny, which applies to federal constitutional errors.

The Appeals Court agreed that the trial court had erred, but did not reverse Mr. Green's conviction. Instead, the Appeals Court held that the error was non-prejudicial using the Massachusetts standard of review that is applied to non-constitutional error. Green, 55 Mass. App. Ct. at 380, 770 N.E.2d at 999.

Subsequently, Mr. Green petitioned for rehearing in the Appeals Court, asserting, as he had previously, that the failure to instruct on defense of another violated his federal constitutional rights, and that, even if the error was not a structural defect that was *per se* prejudicial, he was nonetheless entitled to a new trial under the harmless error standard prescribed by Chapman and its progeny, as opposed to the so-called "prejudicial error" standard that is applied by the state courts to non-constitutionally based errors.  The Appeals Court denied Mr. Green's petition for rehearing, but modified its original July 5, 2002, opinion.  In response to the Commonwealth's assertion that the Appeals Court had misstated the standard for evaluating non-constitutional error, the Appeals Court corrected its description of the non-constitutional harmless error standard and added a footnote at the end of its prejudicial error analysis that the Commonwealth proved that the

error was harmless beyond a reasonable doubt and did not contribute to the verdict obtained in accordance with Chapman.

Mr. Green then filed an Application for Further Appellate Review with the SJC as well as a supplement to the Application that was filed after the Appeals Court denied rehearing and modified its first decision. On June 26, 2003, the SJC denied further appellate review without any opinion.

Then, on February 23, 2004, Mr. Green filed his petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. The crux of Mr. Green's habeas petition is that the trial court failed to instruct the jury on the "defense of another" defense. In Massachusetts, that defense serves as a justification for an actor's conduct. H.J. Alperin & L.D. Shubow, Summary of Basic Law § 9.360 (3d ed. 1996). In particular, Mr. Green avers that the failure to instruct on the defense of another was a federal constitutional error that violated his right to present a defense, his right to a trial in which the Commonwealth was required to prove him guilty beyond a reasonable doubt, and the right to have a jury determine his guilt.

## ANALYSIS

**Standard of Review**

The scope of this Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2241 *et*

*seq*; <u>Lindh v. Murphy</u>, 521 U.S. 320, 322-23 (1997).  The AEDPA "places a . . . constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to grounds adjudicated in state court."  <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000) (O'Connor, J., concurring). A habeas court is not to act as a second jury to determine the guilt of a defendant. <u>Neder v. United States</u>, 527 U.S. 1, 19 (1999).  Instead, habeas relief "has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness."  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 633 (1993) (citations and internal quotations omitted).  "The habeas corpus anodyne is designed neither to provide an additional layer of conventional appellate review nor to correct garden-variety errors, whether of fact or law, that may stain the record of a state criminal trial."  <u>Burks v. Dubois</u>, 55 F.3d 712, 715 (1st Cir. 1995).

The AEDPA standard of review "only applies to a 'claim that was adjudicated on the merits in [the] state court proceedings.'"  <u>Fortini v. Murphy</u>, 257 F.3d 39, 47 (1st Cir. 2001) (quoting 28 U.S.C. § 2254(d)).  Here, Mr. Green contends that only his claim regarding the right to a trial in which the Commonwealth was required to prove him guilty beyond a reasonable doubt was adjudicated by the state court and that it was decided in his favor.  He therefore

8

asserts that his claims regarding the right to present a defense and the right to have a jury determine his guilt are entitled to *de novo* review because they were not adjudicated at the state court level.

The Appeals Court recognized, however, that "'it is the jury's function to assess the credibility of the evidence in light of correct principles of law as delivered to them by the trial judge if there is some evidential basis for the claim.'" Green, 55 Mass. App. Ct. at 379, 770 N.E.2d at 999 (quoting Commonwealth v. Deagle, 10 Mass. App. Ct. 748, 750, 412 N.E.2d 911, 913 (1989)). Additionally, the Appeals Court acknowledged that where a defense has been sufficiently raised by evidence in the record, a defendant is entitled to an instruction that puts the burden on the Commonwealth to disprove the defense presented, concluding that "[a]n instruction on defense of another should have been given." Id. at 380, 770 N.E.2d at 999.

Mr. Green is not, therefore, entitled to *de novo* review of his claims regarding the right to present a defense and the right to have a jury determine his guilt. The Appeals Court considered Mr. Green's claims, albeit in a wholesale fashion, as the claims arose from the same trial court error – the failure to instruct on a defense – and raise similar constitutional due process concerns. Although the Appeals Court determined that an instruction on defense of another should have

9

been given, it also determined that the failure to do so was harmless error.  Id. at 381, 770 N.E.2d at 1000.

**The State Court Decision was Neither "Contrary To" nor "An Unreasonable Application Of" Federal Law**

Pursuant to the AEDPA, a state prisoner can prevail on a petition for a writ of habeas corpus only if the state court's decision was "contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C. § 2254(d)(1); Tyler v. Cain, 533 U.S. 656, 660 (2001).  In response to the statutory language of the AEDPA, the First Circuit clarified the dichotomous standard: "the first category embraces cases in which a state court decision directly contravenes Supreme Court precedent, and the second embraces cases in which a state court decision, although not 'contrary to' relevant Supreme Court precedent, nonetheless constitutes an 'unreasonable application' of relevant Supreme Court precedent."  Williams v. Matesanz, 230 F.3d 421, 424 (1st Cir. 2000) (discussing O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998)).  See also Taylor, 529 U.S. at 404-05 (O'Connor, J., concurring) (explaining that the AEDPA's "contrary to" and "unreasonable application" prongs have independent meaning).  Furthermore, the AEDPA does not require the state courts to cite or even be aware of Supreme Court precedent, as long as "neither the reasoning nor the result of the state-court decision contradicts

10

them." Early v. Packer, 537 U.S. 3, 8 (2002). See also Downs v. Spencer, 238 F. Supp. 2d 332, 336-37 (D. Mass. 2003) (commenting that a state court's failure to directly cite the controlling Supreme Court precedent is "entirely irrelevant").

Mr. Green asseverates that the Appeals Court applied the harmless-error test found in Chapman in a way that contradicts established Supreme Court precedent. Mr. Green can only succeed in the "contrary to" prong, however, if the Appeals Court "either applied the wrong law or reached a conclusion opposite to that reached by the Supreme Court on nearly identical facts." Williams, 230 F.3d at 426.

Mr. Green points to the decision in Neder v. United States, 527 U.S. 1 (1999) in support of his assertion that the failure to instruct on defense of another was not harmless. Neder, however, involved a jury instruction that erroneously omitted an element of an offense, rather than, as in Mr. Green's case, a failure to instruct on a defense. Neder applied Chapman to a specific factual circumstance and although Mr. Green's case is not entirely dissimilar from Neder, the state court did not decide Mr. Green's case "differently than [the Supreme Court] on a set of materially indistinguishable facts." McCambridge v. Hall, 303 F. 3d 24, 35-36 (1st Cir. 2002). The application of the harmless-error standard in Mr. Green's case, therefore, does present a decision that is "contrary to" federal law.

Furthermore, the Appeals Court's application of the harmless error standard was not an "unreasonable application" of federal law. Habeas relief is only appropriate if harmless-error review by a state court is applied in an objectively unreasonable manner. Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Taylor, 529 U.S. at 410 (O'Connor, J., concurring). Thus, some increment of incorrectness beyond error is required for habeas relief to be granted. McCambridge, 303 F.3d at 36. This increment does not have to great, but "it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." Id.

"[I]f it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." Id. at 36. The Appeals Court clearly examined the appropriate standard for giving a particular jury instruction and acknowledged that an error had occurred. After considering the facts of the case presented to the jury, the Appeals Court determined that the absence of the instruction was a harmless error. Based on the facts in the record and the subtle, yet notable, differences between the defense of another and self-defense justifications, the Appeals Court conducted a harmless-error analysis, guided by Chapman. Substantial factual evidence exists in the record to support the Appeals

Court's finding that the jury would not have been swayed differently by the instruction of defense of another. As was the case in Neder, therefore, the state court found that because "the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." Neder, 527 U.S. at 17. The ultimate conclusion reached by the Appeals Court was not an unreasonable application of the Chapman-Neder standard.

**Harmless-Error Standard Used For Collateral Review**

Although the Appeals Court applied the correct harmless-error standard in reaching its decision, this Court applies a different, less exacting, standard for harmless-error review in habeas cases. Sanna v. DiPaolo, 265 F.3d 1, 14 (1st Cir. 2001). An appeals court reviewing a case on direct appeal

> "confronted by a preserved constitutional error must set aside the judgment unless it is satisfied that the error was harmless beyond a reasonable doubt." Sanna v. Dipaolo, 265 F.3d 1, 14 (1st Cir. 2001) (citing Chapman, 386 U.S. at 24, 87 S.Ct. 824). [The First Circuit] has held, however, that the "less exacting" harmless error standard under Brecht, 507 U.S. at 619, 113 S.Ct. 1710, governs our review on habeas. Sanna, 265 F.3d at 14. A federal habeas court . . . is bound to uphold a state court judgment, notwithstanding a preserved constitutional error, as long as the error did not have "a substantial, injurious effect on the jury's verdict." Id. at 14.

Medina v. Matesanz, 298 F. 3d 98, 101 (1st Cir. 2002).[6] This Court is therefore bound to uphold the state court judgment against Mr. Green as long as the error in question – failing to instruct on defense of another – did not have "a substantial injurious effect" on the verdict.

This standard has been interpreted to mean that a petitioner can only be granted habeas relief if he can prove "actual prejudice" due to the trial errors. Brecht, 507 U.S. at 637. Therefore, trial error is considered harmless "if it is highly probable that the challenged action did not affect the judgment." Singleton v. United States, 26 F.3d 233, 237 (1st Cir. 1994) (citations and internal quotations omitted). It is clear that an instruction on defense of another should have been given, as acknowledged by the Appeals Court. Based on the facts of the case, however, it is unlikely that the failure to do so created actual prejudice to Mr. Green. There is substantial evidence to support a conviction of voluntary manslaughter, as well as substantial evidence that the jury would not have been persuaded that Mr. Green was acting in defense of another but not in self-defense. It is indeed "highly probable that the challenged action did not affect the judgment." Id.

---

[6] Although the United States Supreme Court decided Brecht before the enactment of the AEDPA, the First Circuit has consistently held that the Brecht standard "survives the passage of the AEDPA." Sanna, 265 F.3d at 14.

**Conclusion**

For the foregoing reasons, this Court RECOMMENDS that the District Court DENY the petition for a writ of habeas corpus.

SO ORDERED.


 12/21/05                                              /S/ Joyce London Alexander
Date                                                   United States Magistrate Judge

## **NOTICE TO THE PARTIES**

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court the District Court of Massachusetts, any party who objects to this proposed Report and Recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of the Report and Recommendation.  The written objections must specifically identify the proportions of the proposed findings, recommendations or report to which objection is made and the basis for such objection.  The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Svcs., 848 F.2d 271, 273 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 687 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140, 155 (1985), *reh'g denied*, 474 U.S. 1111 (1986).