# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIE GREEN,           ) | |
|                    Petitioner,   ) | **Civil Action No. 04-10360-JLT** |
|       v.                ) | |
| CAROL MECI,             ) | |
|                    Respondent.  ) | |

### PETITIONER WILLIE GREEN'S OBJECTIONS
### TO THE MAGISTRATE JUDGE'S REPORT AND
### RECOMMENDATION ON THE PETITION FOR A WRIT OF HABEAS CORPUS

Willie Green respectfully submits the following objections to the Magistrate Judge's December 21, 2005 Report and Recommendation on the Petition for Writ of Habeas Corpus ("R&R") in which the Magistrate Judge recommended that the Court deny Mr. Green's Petition. For the reasons expressed herein and in the papers previously filed by the petitioner in this proceeding, the Court should not adopt the Magistrate Judge's recommendations and findings, and should instead, GRANT Mr. Green's Petition.[1]

## INTRODUCTION

Mr. Green seeks habeas relief from his conviction for voluntary manslaughter based on the trial court's erroneous refusal to instruct the jury on defense of another and

---

[1] Throughout these objections, Green refers to **(1)** the Memorandum of Law in Support of Willie Green's Petition for Post-Conviction Relief Pursuant to 28 U.S.C. §§ 2241 and 2254, filed with this Court on February 23, 2004 (hereafter "Mem. Law"); **(2)** Petitioner Willie Green's Supplemental Memorandum of Law in Support of His Petition for a Writ of Habeas Corpus, filed on January 10, 2005, (hereafter at "Supp. Mem."); and, **(3)** Petitioner Willie Green's Reply to Respondent's Memorandum in Opposition to Petition for Habeas Corpus, filed March 11, 2005, (hereafter "Reply Mem."). References to the Record Appendix filed with Green's Petition are denoted "R.[page number]." On June 7, 2005, the Magistrate Judge held a non-evidentiary hearing in which the parties argued their respective positions on Mr. Green's habeas corpus petition. On January 10, 2006, after the Magistrate Judge issued her Report and Recommendation, undersigned counsel placed an order for a copy of the transcript of this hearing with the Court Reporter Supervisor, which Petitioner will file with the Court when it is completed.

the Massachusetts Appeals Court's decision in which that Court (after having found that the trial court's error violated Green's federal due process rights that obligated the Commonwealth to disprove the defense beyond a reasonable doubt) held that the omitted instruction was harmless. *Commonwealth v. Green,* 55 Mass. App. Ct. 376 (2002). More specifically, Mr. Green asserts that the Appeals Court failed to apply and follow the Supreme Court's decision in *Neder v. United States,* 527 U.S. 1 (1999), when it conducted its harmless error analysis in this case.

In *Neder,* the Court considered the application of the *Chapman v. California,* 386 U.S. 18 (1967) harmless standard in circumstances where the trial court erroneously failed to instruct the jury on an element of the offense in violation of the defendant's Sixth Amendment rights to have the jury determine whether he was guilty of all elements of the offense. The Court held that such an error could be found harmless beyond a reasonable doubt under *Chapman* without undermining the jury trial guarantee "where a reviewing court concludes beyond a reasonable doubt that <u>the omitted element was uncontested and supported by overwhelming evidence</u>," *Neder,* 527 U.S. at 17 (emphasis supplied), but that "where the defendant <u>contested the omitted element</u> and <u>raised evidence sufficient to support a contrary finding</u> – [the appellate court] should not find the error harmless." *Id.,* at 19 (emphasis supplied). Thus, the rule established by *Neder* (the "*Neder* rule") prohibits a finding of harmless error under *Chapman* when certain conditions are present, *i.e.,* where the issue was contested and there was sufficient evidence to support a finding in the defendant's favor.

Here, the Appeals Court found that Green had contested the Commonwealth's contention that he had acted unlawfully when he killed Lamont Jones because he

2

maintained that he had acted in defense of his friend Michael Burton, and it found that he was entitled to a defense of another instruction because the evidence "was sufficient to support a reasonable belief on the part of a person in the defendant's position (1) that his intervention was necessary for the protection of Burton, and (2) that Burton would have been justified in using such force to protect himself." *Green* 55 Mass. App. Ct. at 380. Had the jury been so instructed, and had the Commonwealth failed to disprove that Green acted in such defense beyond a reasonable doubt, Green would have been acquitted. However, notwithstanding the contested factual issue and the existence of sufficient facts upon which the jury could have found in Green's favor, the Appeals Court ignored *Neder* and engaged in a forbidden weighing of the evidence to find the error harmless.

As described below, it is Mr. Green's position that certain of his claims, including his *Neder* claim, are entitled to *de novo* review because the Appeals Court did not adjudicate these claims. Alternatively, even if he is not entitled to *de novo* review, Mr. Green is still entitled to habeas relief because the Appeals Court's decision was "contrary to," and an "unreasonable application of," clearly established federal law (the *Neder* rule), 28 U.S.C. § 2254(d)(1), and the underlying instructional error clearly had a "substantial and injurious effect on the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).

## OBJECTIONS[2]

**Objection No. 1:**     **The R&R Incorrectly Holds That Mr. Green is not Entitled to *De Novo* Review of Certain Claims.**

---

[2] Pursuant to Rule 3(c) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, the Court "must make a de novo determination . . . of any portion of the magistrate judge's recommended disposition to which specific written objection has been made . . . ."

3

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2241 *et seq,* where the state courts have not "adjudicated [a federal constitutional claim] on the merits," the claim must be reviewed *de novo* by a federal habeas court. *Fortini v. Murphy,* 257 F.3d 39, 47 (1st Cir. 2001); *DiBenedetto v. Hall,* 272 F.3d 1, 6-7 (1st Cir. 2001). Here, the Magistrate Judge held that Mr. Green "is not . . . entitled to *de novo* review of his claims regarding the right to present a defense and the right to have a jury determine his guilt." R&R at 9. This ruling was erroneous as a matter of law and fact.

In the state courts, Mr. Green raised three distinct federal constitutional violations that arose directly from the erroneous refusal to instruct on defense of another: (1) violation of his due process rights to present a defense, (2) violation of his due process and Sixth Amendment rights to have a properly instructed jury decide his guilt, and (3) violation of his due process rights that required the Commonwealth to prove his guilt -- *i.e.,* the absence of the defense -- beyond a reasonable doubt. Supp.Mem. at 6-10. In addition, Green raised a fourth federal constitutional violation arising from the Appeals Court's refusal to follow the Supreme Court's ruling in *Neder*, which constituted a continuing and further violation of Mr. Green's federal constitutional rights because this error (a) deprived Mr. Green of a remedy for the underlying violation of the substantive due process violation; (b) deprived Mr. Green of his federal constitutional rights to have the jury determine his guilt; and, (c) violated the requirement that state courts uphold the Federal Constitution pursuant to Article VI of the Constitution. Supp. Mem. at 3-4, 6-10; R.1006-1015 (Appeals Court Rehearing Petition); R.1067-1068 (SJC App. for FAR); R.1090-1099 (SJC Supp. to App. for FAR).

While the Appeals Court recognized that the trial court's error violated Green's federal due process rights by relieving the Commonwealth of its burden to prove every element of the offense beyond a reasonable doubt (Claim Three above),[3] it never adjudicated Green's separate claims that the error violated his federal due process rights to present a defense (Claim One) and his due process and Sixth Amendment rights to have the jury decide his guilt (Claim Two). Supp. Mem. at 3-4. None of the passages from the Appeals Court's opinion that are cited by the Magistrate Judge (R&R at 9) indicate that the Appeals Court concluded that any violation of these specific federal constitutional rights occurred. The Appeals Court's statement, cited in the R&R at 9, that "`it is the jury's function to assess the credibility of the evidence in light of correct principles of law as delivered to them by the trial judge if there is some basis for the [defense] claim[ed].'" *Green*, 55 Mass.App.Ct. at 379, makes no reference to the federal Sixth Amendment right to trial by jury. Nor was the federal due process right to present a defense mentioned by the Appeals Court.

Even if the Appeals Court can be found to have adjudicated the three federal constitutional claims arising directly from the trial error in a "wholesale fashion," R&R at 9, it did not adjudicate Green's claim that its failure to adhere to the rule established in *Neder* when conducting its harmless error analysis violated his federal constitutional rights (Claim Four), and this claim must be reviewed *de novo* by this Court. The R&R does not address Green's argument that his *Neder* claim was not adjudicated by the

---

[3] In describing the Commonwealth's burden to disprove the defense presented, the Appeals Court cited the Supreme Judicial Court's decisions in *Commonwealth v. Rodriguez, 370 Mass. 684, 687-688 (1976) and Commonwealth v. Maguire,* 375 Mass. 768 (1978), both of which explicitly discuss the Commonwealth's federal due process burden to prove the absence of defense of another beyond a reasonable doubt and rely directly on the Supreme Court's due process decisions in *In re Winship*, 397 U.S. 358 (1970) and *Mullaney v. Wilbur,* 421 U.S. 684 (1975). Green at 55 Mass. App. Ct. at 379.

5

Appeals Court or the Supreme Judicial Court. *See* Supp. Mem. at 4-6 (asserting that *Neder* claim should be reviewed *de novo*).

In this case, even though the Appeals Court apparently understood that the instructional error violated at least one of Green's federal constitutional rights, it consistently analyzed the error by applying the harmless error test that applies to <u>non-constitutional</u> errors. It did this originally in its first opinion. R.994-1004. Green then filed a petition for rehearing in which he argued that the Appeals Court had erred in its harmless error analysis, asserting that the error had violated Green's federal constitutional rights. Green argued that the error amounted to a structural defect that required automatic reversal, and that even if the error was not a structural defect, it could not be held harmless under *Chapman* because of the Supreme Court's ruling in *Neder*. R.1006-1015. The Appeals Court denied rehearing and issued an amended opinion in which it continued to analyze the error in the main text of its opinion under a corrected formulation of the <u>non-constitutional</u> harmless error test, *Green,* 55 Mass. App. Ct. at 381, but added footnote seven in which it stated that "[<u>e</u>]<u>ven considering</u> the trial judge's failure to instruct on defense of another to be error of constitutional dimension, in these circumstances, we determine that the Commonwealth proved that the error was harmless beyond a reasonable doubt and `did not contribute to the verdict obtained.' *Chapman v. California,* 386 U.S. 18, 24 (1967). See *Commonwealth v. Vinnie,* 428 Mass. 161, 163 (1998)." *Green,* 55 Mass. App. Ct. at 381 at n. 7 (emphasis supplied). *See also, R. 1040 (amended slip opinion).* The Appeals Court made no reference whatsoever in its

6

amended opinion to the *Neder* decision and did not articulate why the *Neder* rule did not apply in this case.[4]

Any confusion or ambiguity concerning whether the Appeals Court adjudicated Green's *Neder* claim on the merits should be resolved in Green's favor. As noted by one judge in this district:

> [T]he principles reflected in the rule of lenity favor interpreting the ambiguity in [the state court's] opinion in Petitioner's favor. AEDPA imposes very rigorous standards of review on habeas petitions because of the presumption that the petitioner's collateral claims have already been reviewed explicitly on direct appeal. Therefore, when the state appellate opinion is ambiguous as to whether it addressed the federal claim, the federal claim should be reviewed *de novo*. [citations and footnote omitted]

*Fryar v. Bissonette*, 185 F.Supp.2d 87, 90-91 (D.Mass. 2002) (Ponsor, J.).

Moreover, under the "contrary to" and "unreasonable application" standards imposed by § 2254(d)(1), a federal court is required to review and evaluate the state court's reasoning process to determine, for example: (1) whether the state court "correctly identifie[d] the governing legal rule," *Williams v. Taylor,* 529 U.S. 362, 40 (2000); (2) whether it applie[d] a rule that contradicts governing law set forth in [the Supreme Court's] cases," *id.* at 405; and (3) whether it "applie[d] [established Supreme Court law] unreasonably to the facts of a particular prisoner's case." *Id.* at 407-408. Such analysis cannot be conducted in cases such as this where the sate court has failed to articulate its reasoning sufficiently. The record does not support a conclusion that the Appeals Court considered or even applied *Neder* when conducting its *Chapman* analysis. This claim should be reviewed *de novo*.

---

[4] Petitioner also raised the *Neder* claim in his Application for Further Appellate Review to the Supreme Judicial Court, R. 1067-1068, and in his Supplement to his Application for Further Appellate Review (R.1090-1099) that was filed with the SJC after the Appeals Court issued its amended opinion. R.1040. The SJC denied further appellate review without issuing any opinion. R.1137.

**Objection No. 2:**     **The R&R Erroneously Holds That the State Court's Decision Was Not "Contrary To" Clearly Established Supreme Court Precedent.**

The Magistrate Judge erroneously held that the Appeals Court's failure to apply the rule prescribed in *Neder* was not "contrary to . . . clearly established federal law as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). R&R at 10-11. Under the "contrary to" prong of § 2254(d)(1), a petitioner may succeed on his petition if the state court "either applied the wrong law or reached a conclusion opposite to that reached by the Supreme Court on nearly identical facts." R&R at 11 (emphasis supplied), *citing Williams v. Matesanz,* 230 F.3d 421, 426 (1st Cir. 2000). *See also, Ouber v. Guarino,* 293 F.3d 19, 26 (1st Cir. 2003) (a state court decision is "contrary to" federal law "if the state court either applies a legal rule that contradicts an established Supreme Court precedent or reaches a different result on facts materially indistinguishable from those of a controlling Supreme Court precedent").

Thus, there are two independent bases or sub-prongs upon which a petitioner may demonstrate that a state court's decision was "contrary to" clearly established federal law: (1) the state court applied the wrong law, or (2) it reached a result different from the Supreme Court on materially indistinguishable facts. In this case, the Magistrate Judge erred by not addressing the first sub-prong of the "contrary to" standard, and instead focused only on the second sub-prong, finding only that

> the [Appeals Court] did not decide Mr. Green's case `differently that [the Supreme Court] on a set of materially distinguishable facts.' McCambridge v. Hall, 303 F.3d 24, 35-36 (1st Cir. 2002). The application of the harmless-error standard in Mr. Green's case, therefore, does not present a decision that is `contrary to' federal law.

8

R&R at 11.  However, as demonstrated below, Green is entitled to habeas relief under the first sub-prong because the Appeals Court "applied the wrong law" when it failed to adhere to the *Neder* rule and instead engaged in a prohibited weighing of the evidence under *Chapman.*  Supp. Mem at 10-12, 15; Reply Mem. at 4-5.

    A.    **The *Neder* Rule is Clearly Established Federal Law.**

The *Neder* rule is clearly established federal law that is binding on the state courts.  *See Mitchell v. Esparza,* 540 U.S. 12 (2003) (per curiam).  *See also* Supp. Mem. at 13-14.[5]

    B.    **The Appeals Court's Decision Was "Contrary To" Established Supreme Court Precedent Because It Applied the Wrong Law By Failing to Adhere to the *Neder* Rule When it Conducted its *Chapman* Harmless Error Analysis.**

As held by the Supreme Court, "[a] state-court decision will certainly be contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor,* 529 U.S. 362, 405 (2000).  Under the `contrary to' clause a federal habeas court may grant the writ "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law." *Id.* at 405.  Here, the Appeals Court's decision was contrary to the law established by the Supreme Court in *Neder*.

The *Neder* rule imposes a limitation on a reviewing court's *Chapman* analysis: "where the defendant [1] <u>contested the omitted element</u> and [2] <u>raised evidence sufficient to support a contrary finding</u> – [the appellate court] should not find the error harmless." *Id.,* at 19 (emphasis supplied).  Application of the *Neder* rule is straightforward.  The

---

[5] The Supreme Court's decision in *Neder* issued on June 10, 1999, more than three years before the Appeals Court's July 5, 2002 decision in this case.

9

First Circuit has adhered to *Neder's* limitation on *Chapman* in numerous cases, and has repeatedly refused to find such instructional omissions harmless where the element or fact was contested and there was sufficient evidence to support a finding in the defendant's favor.

For example, in *United States v. Bailey,* 270 F.3d 83, 88-90 (1st Cir. 2001), the Court applied and followed *Neder* in a drug conspiracy case where the trial court committed an *Apprendi* error by not submitting to the jury the factual question of the weight of the drugs, which was a factual determination necessary for the calculation of the defendant's sentence. While the government argued that the Court could find the error harmless, the First Circuit followed the rule prescribed in *Neder,* and held that "[t]his is a finding that <u>we cannot make</u> in this case. The error <u>cannot be harmless</u> where, as here, the defendant has contested the omitted element and the evidence is sufficient to support a contrary finding." 270 F.3d. at 89 (emphasis supplied), *citing Neder,* 527 U.S. at 19.

Similarly, in *United States v. Prigmore,* 243 F.3d 1, 21-23 (2001), the Court rejected the government's contention that under *Neder*, it could find the underlying error (the failure to define for the jury disputed underlying FDA regulatory requirements under which the defendants acted) harmless beyond a reasonable doubt where the government maintained that the even if the jury had been properly instructed, the error did not affect the jury's analysis of other charged offenses. While the Court stated that the government's evidence "was strong" on the other charges, *id*. at 22, it noted that in *Neder*, the Supreme Court had placed "repeated emphasis on the `uncontested' nature of the evidence of materiality in that case," *id,* and it held that

>   while the government's evidence [on the other charges] was strong, the
>   competing evidence was not inherently incredible. <u>That effectively ends
>   the matter. As an appellate court, we are not equipped to make the
>   credibility determinations that must be made in choosing between these
>   clashing blocs of evidence each of which is sufficient to render a rational
>   finding in favor of its proponent.</u> *See Neder,* 527 U.S. at 19, 119 S.Ct.
>   1827.

*Prigmore,* 243 F.3d at 22 (emphasis supplied). *Cf. United States v. Teemer,* 394 F.3d 59, 63 (2005) (had the trial court erred by refusing to instruct the jury that "transitory possession" of a firearm was not "possession" for purposes of 18 U.S.C. § 922(g) (felon in possession), the First Circuit would not have accepted the government's contention that the error was harmless under *Chapman* and *Neder* due to the contested evidence of the circumstances in which the defendant claimed to have held the firearm).

In *Neder,* the element at issue was not contested by the defendant and no contrary evidence was presented, which permitted the Court to find the error harmless under *Chapman* without infringing on the defendant's federal jury trial rights. Here, however, the omitted element -- whether Green had acted unlawfully -- was (1) contested by Green and (2) the Appeals Court found that there was evidence sufficient to support a contrary finding:

>   the jury could have inferred from the evidence that the unarmed Burton
>   was in a more exposed position than the defendant when the shooting
>   began and that Jones was shooting in the direction of both the defendant
>   and Burton. Moreover, even if Burton was not the intended target, he was
>   certainly in imminent danger by virtue of his proximity to the defendant
>   and position on the steps within range of Jones's weapon. The evidence in
>   the light most favorable to the defendant <u>was sufficient to support a
>   reasonable belief</u> on the part of a person in the defendant's position (1)
>   that his intervention was necessary for the protection of Burton, and (2)
>   that Burton would have been justified in using such force to protect
>   himself. An instruction on defense of another should have been given.

*Green,* 55 Mass. App. Ct. at 376 (internal case citations omitted) (emphasis supplied).

11

Given this finding of sufficient evidence on the contested issue of defense of another, per *Neder,* the Appeals Court was not permitted to weigh the evidence and could not find the error harmless. *See Bailey, supra*, 270 F.3d at 89; *Prigmore, supra,* 243 F.3d at 21-23. However, rather than applying the *Neder* limitation to its *Chapman* analysis, the Appeals Court ran afoul of Mr. Green's federal constitutional jury trial rights by weighing the evidence and concluding that a jury would have rejected defense of another. *See* R&R at 12 (stating that "the Appeals Court conducted a harmless-error analysis, guided by *Chapman,*" not *Neder*).

Per *Neder,* it was for the jury and not the trial court or any appellate court to decide whether Mr. Green acted reasonably in defense of Michael Burton by assessing and weighing the facts concerning (1) the gravity and imminency of the harmful threat to Burton, (2) whether Burton was in a more exposed position, (3) whether Burton could have retreated to safety, and (4) what level of force Burton would have been entitled to use to defend himself. Mem. Law at 26-32. The Appeals Court's failure to apply the *Neder* rule to its harmless error analysis resulted in a decision that was "contrary to" established Supreme Court precedent. *See e.g., Williams v. Taylor,* 529 U.S. 362, 391-399 (2000) (Virginia Supreme Court's misconstruction of federal ineffective assistance of counsel standard was "contrary to" *Strickland's* clearly established rule of federal law).

**Objection No. 3:**     **The R&R Incorrectly Holds That the Appeals Court's Decision Was Not "An Unreasonable Application Of" Federal Law.**

Pursuant to the "unreasonable application" prong of 28 U.S.C. § 2254(d)(1), habeas relief may be granted "when the state court identifies the correct legal principle, but unreasonably applies that principle to the facts of the prisoner's case." *Ouber v.*

*Guarino,* 293 F.3d 19, 26 (1st Cir. 2003). This prong "also encompasses situations in which the state court either unreasonably extends a legal principle derived from Supreme Court precedent to an inappropriate context or unreasonably refuses to extend that principle to an appropriate context." *Id. See also, Wiggins v. Smith,* 539 U.S. 510, 520 (2003) ("a federal court may grant relief when a state court has misapplied a `governing legal principle' to `a set of facts different from those of the case in which the principle was announced.'"). The Magistrate Judge erred in finding that "the Appeals Court's application of the harmless error standard was not an `unreasonable application' of federal law."

First, the Appeals Court's failure to apply the *Neder* rule in this instance was objectively unreasonable for the same reasons expressed in Objection 2 above. Having found the omitted element was contested and the existence of sufficient evidence to support a contrary finding, the Appeals Court was prohibited by *Neder* from finding that the error was harmless. It was error for the Magistrate Judge to conclude that the Appeal's Court's failure to adhere to *Neder* was not objectively unreasonable. *See Barker v. Yukins,* 199 F.3d 867 (6th Cir. 1999) (Michigan Supreme Court unreasonably applied *Chapman* harmless error standard in violation of defendant's jury trial rights where it concluded that there was sufficient evidence from which the jury could have found for the defendant, but weighed the competing evidence and found the error harmless).

Second, even assuming *arguendo* that it was somehow permissible for the Appeals Court to conduct a full-blown *Chapman* analysis in which it weighed the competing blocs of evidence, the Magistrate Judge erred by concluding that the Appeals Court's harmless error finding was not an unreasonable application of federal law. R&R

13

at 12-13. While the R&R does not detail the Appeals Court's analysis,[6] the Appeals Court's decision provides the reasoning for its finding of harmless error under *Chapman*. In its decision, the Appeals Court noted that Green's conviction for manslaughter indicated that the jury did not believe that his actions amounted to self-defense because either (1) he acted in self-defense but used excessive force, or (2) he did not act in self-defense, but some mitigating factor was present such as reasonable provocation or sudden combat, which eliminated the element of malice. *Green*, 55 Mass. App. Ct. at 381. The Appeals Court further noted that Green "would have been acquitted had the jury concluded that [he] had acted in self-defense and without excessive force." *Id.* The Court then found that the erroneous refusal to instruct on defense of another was harmless, reasoning as follows:

> In light of the jury's rejection of the defendant's self-defense argument, it is highly unlikely that they would have concluded that he was acting in defense of Burton even if they had been instructed on the subject of defense of another. The defendant and Burton were standing close to each other when the shooting occurred. The actions which the defendant undertook, arguably in his own defense, are the same actions that support his contention that he was acting in defense of another. As the jury failed to view the defendant's actions as justifiable for his own defense, there is no basis to conclude that the jury would have considered those same actions justified when undertaken for the defense of another in the same circumstances.

*Id.*

The Appeals Court's determination that the jury would have rejected defense of another because it apparently concluded that Green had not acted justifiably in self defense was an objectively unreasonable application of *Chapman*. Defense of another is

---

[6] The R&R states that "[b]ased on facts in the record and the subtle, yet notable, differences between the defense of another justifications, the Appeals Court conducted the harmless-error analysis guided by *Chapman*. Substantial factual evidence exists in the record to support the Appeals Court's finding that the jury would not have been swayed differently by the instruction of defense of another." R&R at 12-13.

14

clearly <u>not</u> congruent with self defense.  Each requires a distinct and different evidentiary analysis.  Self defense is permitted only after a person has first availed himself of all proper means to avoid physical combat.  *Commonwealth v. DiCaro,* 359 Mass. 388, 390 (1971).  However, defense of another contemplates affirmative intervention to protect a third person, and "necessarily is irreconcilable with retreat." *Commonwealth v. Sullivan,* 17 Mass. App. Ct. 981, 982 (1984).  Self defense is analyzed from the perspective of the person who is defending himself in terms of (1) the immediacy of the danger presented to <u>him</u>, (2) whether <u>he</u> could have retreated, and (3) if not, whether the amount of force <u>he</u> used to respond to the attack was reasonable under the circumstances. *Commonwealth v. Harrington,* 379 Mass. 446, 450 (1980).  Whereas, defense of another is evaluated from the perspective of the danger posed to the <u>third person</u> and the amount of force that <u>third person</u> would be justified in using to defend himself.  As held by the Appeals Court, there was evidence sufficient to support a reasonable belief on the part of Mr. Green that his intervention was "(1) necessary for the protection of <u>Burton</u>, and (2) that <u>Burton</u> would have been justified in using such force to protect <u>himself</u>." 55 Mass. App. Ct. at 380 (emphasis supplied).

Thus, the jury's analysis of defense of another and the evidence pertaining to it would not have been the same as its analysis of self defense.  It would not have been inconsistent for the jury to have found that Green was not entitled to an acquittal based on self defense because it believed that he could have retreated to safety inside the building, or because it viewed the force he used as excessive to defend himself.  However, on the very same facts (*i.e.,* the "same actions" by Green), the jury could have found that he was justified in standing his ground and that the amount of force he used was reasonable to

15

defend the unarmed Burton who was standing in a more exposed position further from the entry at the top of the railing to the front steps.  Under these circumstances, even under a full *Chapman* analysis, it would be objectively unreasonable to conclude that the error was harmless beyond a reasonable doubt.  However, under *Neder*, such a weighing of the evidence was not permitted, and the error could not be found harmless.

**Objection 4:**     **The R&R Erroneously Held That The State Court Judgment Did Not Have A "Substantial Injurious Effect" On The Verdict.**

Green objects to the Magistrate Judge's reasoning and conclusion that under the harmless error standard applicable to habeas cases, *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993), the errors were harmless.  R&R at 13-14.  Green objects to the application of the *Brecht* standard in the particular circumstances of this case as constituting a continuing violation of his federal constitutional rights to have the jury determine his guilt,[7] however, even under the *Brecht* standard, the error was not harmless.

Under *Brecht,* a federal court may not grant relief unless the error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

---

[7] While Green recognizes that in *Sanna v. DiPaolo,* 265 F.3d 1, 14 n.6 (1st Cir. 2001), the First Circuit held that the *Brecht* standard applies to habeas proceedings even after the enactment of the AEDPA, he submits that the reasoning undergirding *Sanna* should be reevaluated.  In the circumstances of this case, where (1) the state courts had the opportunity, but failed, to address certain of the petitioner's substantive federal constitutional claims brought in state court, and thus never applied the *Chapman* standard to these asserted errors, and (2) purported to apply *Chapman* to another claim but erred in its application by not following *Neder*, Mr. Green was deprived of a standard of review that is part and parcel of his underlying substantive constitutional rights, is constitutionally required, and is binding on the states.  S*ee Chapman,* 386 U.S. at 21-22; *California v. Roy,* 519 U.S. 2, 5 (1996).  In circumstances such as this, to apply the stricter *Brecht* standard, rather than the *Chapman-Neder* standard, would only serve to penalize a petitioner such as Mr. Green on federal habeas review merely because the state courts ignored established Supreme Court precedent and failed to adjudicate certain of his underlying federal claims.  *See* Mem. Law at 14; Supp. Mem. at 18-19.  Moreover, *Neder's* specific prohibition that precludes a reviewing court from finding that an omission of an element of the offense is harmless under *Chapman* where the element is contested and there is contradictory evidence is equivalent to situations in which a court finds a structural defect that requires automatic reversal.  In such instances, the *Brecht* harmless error standard is not applicable to such structural defects.  *See e.g., Sullivan v. Lousiana,* 508 U.S. 275, 279-80 (1993) (error precludes harmless error review because no verdict within the meaning of the Sixth Amendment has been rendered).

*Abrahamson,* 507 U.S. 619, 638 (1993). *See also, Medina v. Matesanz,* 298 F.3d 98, 101 (1st Cir. 2002); *Sanna v. Dipaolo, supra,* 265 at 14; *Fortini v. Murphy,* 257 F.3d 39, 48 (1st Cir. 2001). Under this standard, the prosecution, not the defendant, bears the burden of demonstrating that the error was harmless. *O'Neal v. McAnnich*, 513 U.S. 432, 436 (1995); *Ellis v. United States*, 313 F.3d 636, 644 (1st Cir. 2002).[8] As explained by the First Circuit,

> Under [this standard] . . . trial error is deemed harmless only if the record as a whole permits the reviewing court to conclude: with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error. This test is satisfied if it is highly probable that the challenged action did not affect the judgment.

*Singleton v. United States*, 26 F.3d 233, 237 (1st Cir. 1994) (internal quotations marks and citations omitted).

The Supreme Court's decision in *Kotteakos v. United States,* 328 U.S. 750 (1946), from which the standard in *Brecht* standard was derived, instructs that the determinative consideration in conducting a harmless error analysis is not the strength of the evidence or probability of conviction at a hypothetical trial in which the error did not occur, but "the question is . . . rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of [the jurors] . . . ." *Kotteakas,* 328 U.S. at 764. Further, in close cases where the record review leaves "a federal judge in grave doubt about whether a trial error had a `substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless[,] [a]nd[] the petitioner must win." *O'Neal*, *supra,* 513 U.S. at 436

---

[8] The Magistrate Judge erred in this regard, when she stated that under *Brecht,* a defendant "can only be granted habeas relief if he can prove `actual prejudice' due to the trial errors." R&R at 14. Green objects to this shifting of the burden of persuasion to him. The more recent Supreme Court cases cited above make clear that the burden is on the prosecution, not the petitioner, to prove the error was harmless.

17

("grave doubt" means "that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error[,] [and] . . . the uncertain judge should treat the error, not as if it were harmless, but as if it affected the verdict (i.e., as if it had a `substantial and injurious effect or influence in determining the jury's verdict'" *Id.,* at 435).

Aside from the statement in the R&R at 14 that "[t]here is substantial evidence to support a conviction of voluntary manslaughter, as well as substantial evidence that the jury would not have been persuaded that Mr. Green was acting in defense of another but not self-defense," the Magistrate Judge provided no detailed reasoning for her conclusion that it is "`highly probable that the challenged action did not affect the judgment.'" *Id.* at 14 (citing *Singleton,* 26 F.3d at 237). This conclusion was erroneous.

As noted above in Objection 3, it may well be that the jury convicted Mr. Green of manslaughter because it believed that he used excessive force in self-defense. Or, as noted by the Appeals Court, the jury may have rejected self-defense on the basis that he could have retreated to safety and found him guilty on another theory of involuntary manslaughter such as reasonable provocation or mutual combat. Neither of these verdicts, however, would have precluded the jury from acquitting him based on defense of another. As demonstrated above in Objection 3, self-defense and defense of another are not congruent in terms of their analysis. The Appeals Court's conclusion that there was "<u>no basis</u> to conclude that the jury would have considered those same actions [taken in self defense] justified when undertaken in defense of another under the same circumstances," Green, 55 Mass. App. Ct. at 381 (emphasis supplied), is simply incorrect.

There was both a factual and a legal basis for the jury to find that Green acted in defense of another. First, the Appeals Court itself had already concluded that there was sufficient evidence from which the jury could have found that Green acted in defense of another. Thus, as a factual matter, the evidence was sufficient. Second, as demonstrated above in Objection 3, it would not have been inconsistent as a matter of law for the jury to have rejected self-defense on the grounds that Green could have retreated to safety or because the jury viewed him as having used excessive force in self-defense, but to have found that the "same actions" were justifiable in defense of Michael Burton. As noted previously, under a defense of another instruction, the jury would have been required to analyze the evidence not from Green's perspective, but from an entirely different perspective, that of Michael Burton, including for example, (1) the imminency of the threat and danger posed to Burton, (2) whether Burton could retreat to safety without intervention, (3) and how much force was necessary to protect Burton. Given these circumstances, the Appeals Court's faulty reasoning provides no support for the erroneous conclusion by the Magistrate Judge that it is highly probable that the challenged action did not affect the judgment.

Here, one cannot say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Singleton v. United States,* 26 F.3d 233, 237 (1st Cir. 1994). For Mr. Green, defense of another was his strongest defense at trial. The error was central to jury's the determination of his guilt or innocence, and one cannot say with fair assurance that the jurors were not substantially swayed by the error in their

19

deliberations. The circumstances are more than sufficient to raise grave doubt as to whether the error created a substantial and injurious effect on the verdict.

## CONCLUSION

For all of the foregoing reasons, the Court should not adopt the recommendations and findings of the Magistrate Judge, and instead, should GRANT Mr. Green's Petition.

DATED: January 13, 2006

>Respectfully submitted,
>
>/s/Philip G. Cormier
>Philip G. Cormier
>BBO#554515
>Good & Cormier
>83 Atlantic Avenue
>Boston, MA 02110
>Tel. 617-523-5933
>Fax. 617-523-7554
>*Counsel for Willie Green*

### CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2006, I caused a copy of the above document to be served by first class mail, postage pre-paid, to Assistant Attorney General Susanne G. Reardon, Office of the Attorney General, Criminal Bureau, One Ashburton Place, Boston, MA 02108.

>/s/Philip G. Cormier
>Philip G. Cormier

G:\CLIENTS\Green\Federal Habeas\Objections to R&R FINAL.doc