**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

WILLIE GREEN,
Petitioner,
v.
CAROL MECI,
Respondent.

**Civil Action No. 04-10360-JLT**

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER WILLIE GREEN'S MOTION FOR A CERTIFICATE OF APPEALABILITY**

Petitioner Willie Green submits this memorandum in support of his motion for the issuance of a Certificate of Appealability ("COA"). For the reasons expressed herein, the Court should issue the requested COA.

**PROCEDURAL BACKGROUND**

On February 24, 2004, Petitioner filed a habeas corpus petition in this Court seeking relief for federal constitutional violations arising in the context of his state court conviction for manslaughter. *See Commonwealth v. Green,* 55 Mass. App. Ct. 376 (2002). The Court referred this matter to the Magistrate Judge for recommendations on whether the Respondent's motion to dismiss the petition should be granted. On August 27, 2004, the Magistrate Judge recommended that the motion to dismiss be denied, finding that Green had exhausted all claims. This Court adopted the Magistrate Judge's Report and Recommendation, and denied Respondent's Motion to Dismiss on October 27, 2004.

On June 7, 2005, the Magistrate Judge held a non-evidentiary hearing at which the parties presented oral argument setting forth their respective positions on Green's Petition. On December 21, 2005, the Magistrate Judge issued a Report and Recommendation on the Petition for Writ of Habeas Corpus ("R&R") in which the Magistrate Judge recommended that the Court

deny Mr. Green's petition. On January 13, 2006, Petitioner submitted Objections to the Magistrate Judge's R&R. On January 18, 2005, the Court adopted the Magistrate Judge's R&R and denied Petitioner's Petition for a Writ of Habeas Corpus.[1]

**ARGUMENT**

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." This standard is satisfied if a petitioner "demonstrate[s] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockerell*, 537 U.S. 322, 327 (2003). A petitioner seeking a COA is not required to show that the appeal will succeed.

> [A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. . . . "[w]here a district court has rejected the constitutional claim on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." [*Slack v. McDaniel*], 529 U.S. at 484, 120 S.Ct. 1595.

*Miller-El v. Cockerell*, 537 U.S. at 338. *See also, Patrick v. United States*, 298 F.Supp.2d 206, 210 (D.Mass. 2004) (citing *Slack v. MacDaniel*, 529 U.S. 473, 484 (2000)); *United States v. Lopez*, 334 F.Supp.2d 777, 780 (D.Mass. 2003) ("this Court is to grant a COA if the issues on which it found against the petitioner were close").

In this habeas proceeding, Mr. Green asserted that he was deprived of his federal constitutional rights by (1) the trial court's erroneous refusal to instruct the jury on defense of another, and (2) the Massachusetts Appeals Court's failure to follow the rule

---

[1] Because the Court adopted the Magistrate Judge's Report and Recommendations (R&R) in their entirety and without qualification, in this memorandum petitioner treats the R&R as the Court's opinion.

established in *Neder v. United States,* 527 U.S. 1 (1999), in which the Supreme Court held that the failure to instruct the jury on an element of the offense may not be held harmless beyond a reasonable doubt "where the defendant contested the omitted element and raised sufficient evidence to support a contrary finding." *Id.* at 19. More specifically, Mr. Green asserted that the trial court's erroneous refusal to instruct on defense of another violated (1) his federal due process rights to present a defense; (2) his federal due process and Sixth Amendment rights to have a properly instructed jury decide his guilt, and (3) his federal due process rights that required the Commonwealth to prove his guilt beyond a reasonably doubt by disproving the absence of defense of another. Mr. Green further asserted that the Appeals Court's failure to follow and apply the *Neder* when conducting its harmless error analysis (after it found that the trial court violated Mr. Green's federal constitutional rights by refusing to instruct on defense of another) constituted a continuing and further violation of his Sixth Amendment rights to have the jury, and not the appellate court, determine his guilt. For the reasons expressed below, Green respectfully submits that this Court's disposition of his constitutional claims was erroneous, and that, at minimum, reasonable jurists could disagree with the Court's resolution of his claims.

## I. THE COURT'S DETERMINATION THAT MR. GREEN IS NOT ENTITLED TO *DE NOVO* REVIEW OF CERTAIN CONSTITUTIONAL CLAIMS WAS ERRONEOUS AND IS AT LEAST DEBATABLE AMONG REASONABLE JURISTS.

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2241 *et seq*, where the state courts have not "adjudicated [a federal constitutional claim] on the merits," the claim must be reviewed *de novo* by a federal habeas court. *Fortini v. Murphy,* 257 F.3d 39, 47 (1st Cir. 2001); *DiBenedetto v. Hall*, 272 F.3d 1, 6-7 (1st Cir. 2001). Here, the Court

has held, via adoption of the Magistrate Judge's Report and Recommendation ("R&R"), that Mr. Green is not entitled to *de novo* review of his claims that the refusal to instruct on defense of another violated (1) his federal due process rights to present a defense and (2) his Sixth Amendment rights to have the jury determine his guilt because the Appeals Court adjudicated these particular claims on the merits in a "wholesale fashion" when it found that the trial court's instructional error violated Mr. Green's due process rights by relieving the Commonwealth of its burden to prove every element of the offense beyond a reasonable doubt. R&R at 9.

This determination was erroneous for the following reasons: First, at no point in its opinion, did the Appeals Court state that Mr. Green's federal constitutional rights to present a defense and his Sixth Amendment right to have the jury determine his guilt as to every element of the offense had been violated by the erroneous refusal to instruct on defense of another. Second, while the Appeals Court appeared to recognize that the instructional error violated Green's due process right by relieving the Commonwealth of its burden to disprove defense of another beyond a reasonable doubt, when it conducted its harmless error analysis, the Appeals Court consistently treated the error as <u>non-constitutional</u> in nature and reviewed the error under the harmless error standard that applies to <u>non-constitutional</u> errors, and it did so even in the main text of its amended opinion to which it added footnote seven stating that "even considering" the error "to be error of constitutional dimension," the error was harmless under *Chapman v. California,* 386 U.S. 18 (1967). *See Commonwealth v. Green,* 55 Mass. App. Ct. 376, 381, n.7 (2002). Given this contradiction in the Appeals Court's analysis (continuing to treat the error as non-constitutional error, but adding that even if it was constitutional error, it was harmless), and the lack of any statement indicating that the Appeals Court even considered Mr. Green's specific claims that the error violated his federal constitutional rights to present a

defense and his right to have the jury determine his guilt on every element of the offense, it is certainly debatable among reasonable jurists as to whether the Appeals Court adjudicated these specific claims on the merits for purposes of determining whether *de novo* review was required.

Similarly, whether Green's *Neder*-based claim was adjudicated on the merits by the Appeals Court is also debatable among reasonable jurists.[2] The Appeals Court's reference in footnote seven to the harmless error standard established in *Chapman* does not establish that the Appeals Court adjudicated Mr. Green's claim that the error could not be found harmless under the rule established in *Neder* because doing so would violate his Sixth Amendment rights to have the jury determine his guilt. There is no reference in the Appeals Court's opinion to the Supreme Court's *Neder* decision. Moreover, as noted above, the Appeals Court's opinion is internally inconsistent on whether the error was constitutional or non-constitutional in nature, which further suggests that the Appeals Court never adjudicated Green's claim that under *Neder* the error could not be found harmless without violating his Sixth Amendment rights to a jury determination on every element of the offense. Reasonable jurists could disagree on whether the Appeals Court's inconsistent reasoning and its failure to expressly address Green's clearly delineated constitutional claims amounted to an adjudication on the merits. *See Fryar v. Bissonette*, 185 F. Supp.2d 87, 90-91 (D.Mass. 2002) ("when state appellate opinion is ambiguous as to whether it addressed the federal claim, the federal claim should be reviewed *de novo.*").

[2] The Magistrate Judge's R&R did not address Mr. Green's argument that his specific *Neder* claim should be reviewed *de novo* by this Court because it was never adjudicated by the Appeals Court. *See* Green's *Supplemental Memorandum of Law in Support of His Petition for A Writ of Habeas Corpus*, filed on January 10, 2005, at 4-6 (arguing that the *Neder* claim should be reviewed *de novo*).

## II. THE COURT'S DETERMINATION THAT THE STATE COURT'S DECISION WAS NOT "CONTRARY TO" CLEARLY ESTABLISHED SUPREME COURT PRECEDENT WAS ERRONEOUS, AND AT MINIMUM, DEBATABLE AMONG REASONABLE JURISTS.

The R&R adopted by the Court determined that the Appeals Court's decision was not "contrary to . . . clearly established federal law as determined by the Supreme Court of the United States. . . ." 28 U.S.C. § 2254(d)(1). R&R at 10-11. This determination was erroneous and certainly debatable among reasonable jurists.

As described in Green's Objections to the Magistrate Judge's Report and Recommendations on the Petition for a Writ of Habeas Corpus ("Objections to R&R") at 8,[3] there are two independent bases upon which a petitioner may demonstrate that a state court's decision was "contrary to" clearly established federal law: (1) the state court applied the wrong law, or (2) it reached a result different from the Supreme Court on materially indistinguishable facts. In this case, the Court (Magistrate Judge's R&R) never addressed the first sub-prong of the "contrary to" standard, and instead focused only on the second sub-prong, finding only that

> the [Appeals Court] did not decide Mr. Green's case 'differently that [the Supreme Court] on a set of materially distinguishable facts.' McCambridge v. Hall, 303 F.3d 24, 35-36 (1st Cir. 2002). The application of the harmless-error standard in Mr. Green's case, therefore, does not present a decision that is 'contrary to' federal law.

R&R at 11. Green is entitled to habeas relief under the first sub-prong because the Appeals Court "applied the wrong law" when it failed to adhere to the *Neder* rule and instead engaged in a prohibited weighing of the evidence under *Chapman. See Williams v. Taylor,* 529 U.S. 362, 405 (2000) ("[a] state-court decision will certainly be contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases"). *See also* Petitioner's Supp. Mem. at 10-12, 15 and Reply Mem. at 4-5, filed previously in this

---

[3] Green's Objections were filed on January 13, 2006.

proceeding. In this case it is certainly debatable among reasonable jurists whether the Appeals Court's decision was contrary to the law that was clearly established by the Supreme Court in *Neder.*

First, as noted in Section I above, the Appeals Court never even referenced or discussed *Neder* in its opinion, and hence, there is no record basis on which to conclude that it even applied *Neder* in this case.

Second, to the extent that the Appeals Court can somehow be found to have considered, but rejected, *Neder's* application to this case, its decision was "contrary to" clearly established Supreme Court precedent. The rule established in *Neder* imposes a limitation on a reviewing court's *Chapman* analysis: "[W]here the defendant [1] contested the omitted element and [2] raised evidence sufficient to support a contrary finding – [the appellate court] should not find the error harmless." *Id.*, at 19 (emphasis supplied). In the case at bar, both of these *Neder* conditions were met such that the Appeals Court was precluded from finding the error harmless: (1) Green contested the Commonwealth's allegations that he had acted without lawful justification by asserting that he had acted in defense of his friend Michael Burton, and (2) the Appeals Court found that there was evidence sufficient to support a finding that he had acted in defense of Burton. *See Commonwealth v. Green,* 55 Mass. App. Ct. at 376.

Moreover, Green's position finds further support in First Circuit case law, which has applied *Neder* in a variety of circumstances, including situations involving contested facts bearing on the defendant's sentence. *See e.g.*, *United States v. Bailey*, 270 F.3d 83, 88-90 (1st Cir. 2001) (applying *Neder* where the trial court erred by not submitting to the jury the factual question of the weight of the drugs and holding that the error could not be found harmless: "[t]his is a finding that we cannot make in this case. The error cannot be harmless where, as

here, the defendant has contested the omitted element and the evidence is sufficient to support a contrary finding.") (emphasis supplied). At minimum, whether the Appeals Court's decision was "contrary to" established Supreme Court precedent is debatable among reasonable jurists.

## III. THE COURT'S DETERMINATION THAT THE STATE COURT'S DECISION WAS NOT AN "UNREASONABLE APPLICATION OF" CLEARLY ESTABLISHED SUPREME COURT PRECEDENT WAS ERRONEOUS, AND AT MINIMUM, DEBATABLE AMONG REASONABLE JURISTS.

The Court's determination that the Appeals Court's finding of harmless error constituted an unreasonable application of *Neder* is debatable among reasonable jurists. As described in Section II, *supra*, the Appeals Court never referred to *Neder* in its decision, and the *Neder* rule precludes a finding of harmless error where there are sufficient facts to support the defendant's position on a contested element or disputed fact that is necessary to convict.

The case of *Barker v. Yukins*, 199 F.3d 867 (6th Cir. 1999) supports Green's position. In *Barker*, the Sixth Circuit granted a state prisoner relief under § 2254(d)(1) where the Michigan Supreme Court unreasonably applied the *Chapman* harmless error standard in circumstances nearly identical to those presented in the case at bar.

In *Barker*, the defendant was convicted of murder after a trial in a Michigan state trial court in which she had sought to interpose a defense of self-defense involving deadly force which she claimed to have used to prevent an imminent rape. The trial court instructed the jury that Barker was entitled to defend herself with deadly force if she honestly believed that she was in danger of death or serious bodily injury, but refused to instruct the jury that she was entitled to use deadly force if she believed that she was about to be raped. The Michigan Court of Appeals affirmed the conviction on the grounds that Barker was not entitled to the instruction she had requested. The Michigan Supreme Court disagreed, finding that the trial court had erred because under Michigan law Barker was entitled to use deadly force if she believed she was about to be

raped. However, the Michigan Supreme Court held that "the error was harmless because no reasonable juror would have believed [Barker's] claim of self-defense." *Id*. at 870. Among other things, the Michigan Supreme Court had noted that the deceased was 81 years old, walked with a cane and was unsteady on his feet, and Barker was in her early twenties, five feet seven inches tall, and weighed 170 pounds. The Court also noted that the deceased had received ten blows to the head and had been stabbed thirty-two times. On this basis, it found "that no reasonable juror could have believed such force was necessary to prevent a rape by the 'enfeebled' victim." *Id.*

The Sixth Circuit rejected the Michigan Supreme Court's harmless error analysis, holding *inter alia* that a reasonable juror could well have believed that Barker had been resisting a rape, and that the Michigan Supreme Court usurped the role of the jury in violation of Barker's due process and jury trial rights by engaging in a weighing of the competing evidence in which it "believed some evidence but discredited other evidence," *id.*, at 874, when "it [was] for the jurors to decide whether the amount of force was justifiable or unjustifiable" and whether the victim was enfeebled or capable of sexual assault. *Id.*, at 875. Here, as in *Barker,* there is a more than colorable argument that the Appeals Court's harmless error finding was impermissible and objectively unreasonable where it weighed the competing evidence to reach its conclusion that the jury would have rejected defense of because it had rejected Green's claim of self defense.

Finally, even assuming *arguendo* that the Appeals Court was permitted to conduct a *Chapman* analysis in which it weighed the evidence, whether such an analysis was an unreasonable application of *Chapman* is debatable among reasonable jurists for the reasons pointed out in Green's Objection to the R&R at 13-16. As described therein, the Appeals Court

improperly equated self-defense with defense of another, and unreasonably concluded that because the jury rejected self-defense, it was highly unlikely that it would have concluded that he acted reasonably in defense of Burton. The Appeals Court's analysis ignored that defense of another permits affirmative intervention and does not require retreat by the defender, and that defense of another is evaluated not from the perspective of the individual defending himself, but from the perspective of the danger posed to the third person, and the amount of force that the third person would be justified in using to defend himself. Hence, in this case, while the jury would have viewed self-defense from the perspective of the danger posed to Green and his ability to retreat, it would have evaluated defense of another from Michael Burton's perspective, the danger posed to him and the amount of force needed to protect him. It would not have been inconsistent for the jury to have rejected self-defense but at the same time acquitted Green based on his defense of Burton.

The Court's disposition of this issue adversely to Green was erroneous and certainly debatable among reasonable jurists.

**IV. THE COURT'S DETERMINATION THAT THE STATE COURT JUDGMENT DID NOT HAVE A "SUBSTANTIAL AND INJURIOUS EFFECT" ON THE VERDICT WAS ERRONEOUS, AND AT MINIMUM, DEBATABLE AMONG REASONABLE JURISTS.**

Generally, a federal court may not grant habeas relief unless the error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). *See also*, *Medina v. Matesanz*, 298 F.3d 98, 101 (1st Cir. 2002); *Sanna v. Dipaolo*, *supra*, 265 at 14; *Fortini v. Murphy*, 257 F.3d 39, 48 (1st Cir. 2001). Under this standard, the prosecution, not the defendant, bears the burden of demonstrating that the error was harmless. *O'Neal v. McAnnich*, 513 U.S. 432, 436 (1995); *Ellis v. United States*, 313 F.3d 636, 644 (1st Cir. 2002). As explained by the First Circuit,

> Under [this standard] . . . trial error is deemed harmless only if the record as a whole permits the reviewing court to conclude: with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error. This test is satisfied if it is highly probable that the challenged action did not affect the judgment.

*Singleton v. United States*, 26 F.3d 233, 237 (1st Cir. 1994) (internal quotations marks and citations omitted).

In his habeas petition and in his Objections to the R&R at 16-20, Green made the following arguments concerning the application of the *Brecht* standard to the case at bar: **(1)** Because the Appeals Court had the opportunity, but failed, to adhere to the *Chapman-Neder* standard, Mr. Green was deprived of a standard of review that is part and parcel of his underlying substantive constitutional rights, and therefore, application of the *Brecht* standard would unfairly penalize him on habeas review merely because the state courts ignored established Supreme Court precedent. **(2)** Even if the *Brecht* standard applies to this case, the Court erred in finding against Petitioner on this issue, because **(a)** it erroneously held that Petitioner bears the burden of proving "actual prejudice' due to the trial errors, *see* Objections to the R&R at 17, n.8, and **(b)** the record in this case, where, among other things, the Appeals Court held that there was sufficient evidence from which a jury could find that Mr. Green acted in defense of another, precludes a finding that it is "highly probable that the challenged action did not affect the judgment." *Singleton*, *supra*, 26 F.3d at 237.

Assessment of an error under *Brecht* focuses on "what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of [the jurors]." *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).[4]

---

[4] The *Brecht* standard is derived from the harmless error standard established in *Kotteakas. See Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993) (holding that *Kotteakas* standard applies in determining whether habeas relief should be granted ).

Here, the Court's finding that there is "substantial evidence that the jury would not have been persuaded that Mr. Green was acting in defense of another but not self-defense," R&R at 14, was erroneous and it is certainly debatable among reasonable jurists whether one can conclude that the judgment "was not substantially swayed by the error." *Singleton, supra,* 26 F.3d at 237.

Defense of another was critical to Green's defense in this case. However, due to the trial judge's error, the jury was never given the opportunity to assess whether the Commonwealth proved beyond a reasonable doubt that Green had not acted in defense of Burton. It would not have been inconsistent for the jury to have rejected self-defense on the grounds that Green could have retreated to safety or because the jury found the force used to have been excessive for self-defense, but at the same time found that the "same actions" were justifiable in defense of the unarmed Michael Burton who was standing in a more exposed position farther from the entrance to the building. Pursuant to a defense of another instruction, the jury would have been required to analyze the evidence not from Green's perspective, but from an entirely different perspective, that of Burton, including for example, (1) the immanency of the threat and danger posed to Burton, (2) whether Burton could retreat to safety without intervention, (3) and how much force was necessary to protect Burton.

It is worth noting that in *Barker v. Yukins, supra*, 199 F.3d at 867, the Sixth Circuit found that the refusal to instruct on self-defense in that case was not harmless under the *Brecht* standard even though the credibility of the defendant's claim of self-defense was highly questionable because the only evidence of what occurred came entirely from her mouth and forensic evidence suggested that she may have used extreme and excessive force. *See Barker,* 199 F.3d at 873 (citing *O'Neal v. McAnnich*, 513 U.S. 432, 436 (1995) and finding that the refusal to give the requested self defense instruction was "sufficient to raise grave doubt as to whether the general

self defense instruction created a substantial and injurious influence on the verdict"). Here, as compared to *Barker*, the underlying evidence of Green's actions taken in Burton's defense was much stronger, and would have been even more persuasive to the jury had they been properly instructed. Unlike *Barker*, the evidence of what occurred here did not consist of self-serving statements from Green's mouth, but rather, it came from a bystander witness and from Burton, who described Green's location in the doorway and the unarmed Burton's more exposed position at the railing to the steps when Lamont Jones took out his gun and began firing at them from the sidewalk. *See Commonwealth v. Green*, 55 Mass. App. Ct. at 378 & 380. In these circumstances, as in *Barker*, one cannot conclude with fair assurance that the jurors were not substantially swayed in their deliberations by the failure to instruct on defense of another. This Court's determination that they were not substantially swayed was erroneous and debatable among reasonable jurists.

**CONCLUSION**

Petitioner has made a substantial showing of the denial of his constitutional rights and has demonstrated that jurists of reason could disagree with the Court's resolution of his constitutional claims. For all the foregoing reasons, the Court should grant a Certificate of Appealability.

DATED: February 14, 2006

Respectfully submitted,

/s/Philip G. Cormier
Philip G. Cormier
BBO#554515
Good & Cormier
83 Atlantic Avenue
Boston, MA 02110
Tel. 617-523-5933
Fax. 617-523-7554

*Counsel for Willie Green*

CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2006, I caused a copy of the above document to be served by first class mail, postage pre-paid, to Assistant Attorney General Susanne G. Reardon, Office of the Attorney General, Criminal Bureau, One Ashburton Place, Boston, MA 02108.

/s/Philip G. Cormier
Philip G. Cormier

G:\CLIENTS\Green\Federal Habeas\Mem of Law in Support of Cert of Appealability FINAL.doc